66 407
114 28

66 407
s33NW 722
129 ² 45
129 46n

JOHN CAHILL ET AL. v. JAY BASSETT AND HONORA HASSETT.

*Executors and administrators—Sale of real estate to pay debts—Petition—Adjournment—License to mortgage—Sale—Publication of notice.*

1. The judgment in this case being affirmed by an equal division of the Court, *nothing is decided.*

2. SHERWOOD, J., filed an affirmative opinion, concurred in by CAMPBELL, C. J., holding:

*a*—A duly verified petition by an administrator for license to sell real estate for the payment of debts, filed under How. Stat. §§ 6025-6027, showing that an inventory and appraisal of the estate was on file, and the absence of personal estate, and the amount of debts due from the estate as far as he could ascertain, and the estimated expenses of administration, and giving the names and places of residence of the heirs and other persons interested in the estate, and alleging the necessity for the sale of real estate in order to pay said debts and expenses of administration, states all the *facts* necessary to give the court jurisdiction to proceed in the matter.

*b*—The report of commissioners upon claims is only necessary to enable the administrator to make payment of the same without suit, and to enable the claimant to bring suit if payment is wrongfully withheld; and, for the purpose of making application for the sale of real estate for the payment of debts, any other competent and sufficient proof may be made of such indebtedness.

*c*—Where the petition of an administrator for license to sell real estate to pay debts was denied, but he was licensed to mortgage the same for a like purpose, and all the parties interested, except creditors, were heard in the matter,—

*Held,* that the granting of such license was within the discretion of the court, all of the circumstances being considered.

*d*—In *such* a case, the administrator failing to mortgage the property under said license, the court afterwards entered an order for the sale of the real estate, based on the same petition, and reciting the former order, and the failure of the administrator to comply with the same, and that the matter had been continued by the previous orders of the court until the day of making said order of sale.

*Held*, that the court had power to continue the matter for final order in the premises, as recited in the final order, which recital must prevail, in the absence of opposing testimony; the probate court being a court of record, whose orders and decrees should have full credence in collateral proceedings where they come in issue, in cases where the court acquired jurisdiction.

*e*—Where in an action of ejectment by the heirs of a deceased land-owner to recover possession of real estate sold by his administrator, under license duly granted, to pay debts due from the estate, said defendants being *bona fide* purchasers, the record evidence showed that the notice of sale was not published for the statutory time, being short one week, but that three notices of adjournment were duly published, and there was no proof of the non-posting of such notice in the ward where the property was situate, and the deed of the administrator had been executed for nearly eight years, and four of the plaintiffs were of full age when the probate proceedings were taken, and the · widow was asking for dower at the time of hearing in the circuit court,—

*Held*, that, under the circumstances, there are no superior equities in the plaintiffs, and that defendants' title ought not to be disturbed.

3. CHAMPLIN, J., filed an opinion favoring a reversal, concurred in by MORSE, J., holding:

*a*—That the probate court had no authority to grant a license to *mortgage* the land without the filing of a new petition for that purpose.

*b*—That the court could not, without new petition and notice, grant a license to sell the real estate under the petition theretofore refused.

*c*—That the defective publication of the notice of sale could not be cured by adjournment, the statute being designed for the protection of parties interested, and to induce competion in bidding at the sale.

Error to superior court of Detroit. (Chipman, J.) Argued April 13, 1887. Decided June 23, 1887.

Ejectment. Plaintiffs bring error. Affirmed by an equal division of the Court. The facts are stated in the opinion.

*W. L. Carpenter* (*H. H. Swan*, of counsel), for appellants.
*Walker & Walker*, for defendants.

SHERWOOD, J. The plaintiffs bring ejectment to recover

the northerly half of lot number six, in block number twelve, in Crane and Wesson's subdivision of the Forsyth farm, in the city of Detroit. The plea was the general issue.

The cause was tried in the superior court of Detroit by the judge thereof, without a jury, who, at the request of the parties, found the facts, and upon such findings entered judgment for the defendants.

It appears from these findings that William Cahill died intestate in 1876, and was at that time a resident of Marquette; that the plaintiffs named in the declaration are his only heirs at law; that administration was had upon the estate of William in the probate court of Marquette county, and that Edward D. Nelson was duly appointed administrator of his estate; that on the tenth day of January, 1878, the administrator filed his petition for leave to sell the real estate, which comprises the land in question, for the payment of the debts of the estate, and that such subsequent proceedings were had thereon that afterwards, on the twentieth day of August, 1879, the lands in question were sold to Homer A. Flint, and the sale on the twenty-sixth day of September following was duly confirmed by the probate court; that on the ninth day of October 1879, the premises were duly conveyed by the administrator to Mr. Flint, the purchaser, who immediately took possession of the same, and that he and his grantees have been in possession ever since; that Bassett claims title through *mense* conveyances from Flint, and that he purchased the premises in good faith, and claims to own the land in fee simple. The other defendant claims only as tenant of Bassett.

Bassett also holds three city tax titles for taxes of 1877, 1878, and 1881, and one title for the State and county tax of 1878.

The court further found—

"That in 1880, Mary P. Burt held a mortgage upon said

premises, executed by Henry S. Thomas, who was in possession thereof, claiming to own the same as a grantee of said Flint."

The court further found as follows :

"8. That said premises were sold for the non-payment of the city taxes assessed thereon for the years 1877 and 1878, on June 1, 1878, and June 1, 1879, respectively, and were bid in at such sales by the city of Detroit; that on November 9, 1880, one Bryant Walker, acting for said Mary P. Burt, paid to the treasurer of the city of Detroit the amount for which said land was sold to the city, and received from said city treasurer an assignment of the city's bid therefor in due form, in which assignment said Walker was named as assignee; that by reason of said payment and assignment, in February, 1884, the controller of the city of Detroit executed in due form of law, and delivered to said Bryant Walker leases for said premises, in accordance with the terms of said respective sales, to wit, for the term of ninety-nine years from the several dates thereof.

" 9. That in October, 1879, said premises were sold for the non-payment of the State and county taxes assessed thereon for the year 1878, and were bid in at such sale by the State of Michigan; that on the ninth day of December, 1880, said Bryant Walker, acting for said Mary P. Burt, paid the State Treasurer the amount for which said land had been sold, together with the charges and interest to that date, and received a deed thereof from the Auditor General of the State of Michigan, in due form of law, in which deed said Bryant Walker was named as grantee; that said several purchases were made by said Walker for the benefit of said Mary P. Burt, who held said mortgage on said premises.

"10. That subsequently, on January 21, 1881, said Mary P. Burt commenced proceedings in chancery to foreclose said mortgage, on the ground that default had been made in the payment of the taxes above named, and obtained a decree ordering said premises to be sold to pay said mortgage and taxes, and the interest thereon; that the amount paid by said Walker for said city and State and county tax titles was included in the amount decreed to be due to said Burt; that subsequently said premises were sold under said decree for an amount sufficient to pay said decree; that said Bassett became the purchaser at said sale, which was made March 11, 1882, and said decree was satisfied by the payment of said

purchase money to said Mary P. Burt; that said Walker now holds said tax titles for the use and benefit of said defendant Bassett.

" 11. That in June, 1882, said premises were sold for the non-payment of the city taxes assessed thereon for the year 1881, and were bid in at such sale by the city of Detroit; that on May 26, 1883, said Bryant Walker, acting for said defendant Bassett, paid to the city treasurer the amount for which said land was sold, together with interest and charges to that date, and received from him an assignment of the city's bid therefor in due form, in which assignment said Walker was named assignee; that on the ninth day of February, 1884, the controller of the city of Detroit, by reason of said payment and assignment, executed in due form of law, and delivered to said Walker, a lease of said premises for the term of ninety-nine years from the date of said sale, in accordance with the terms of said sale; that said purchase was made by said Walker for the benefit of said defendant Bassett.

" 12. That in 1877, 1878, and 1881 said land was assessed to plaintiff's ancestor, William Cahill; that there was included in the amount for which said land was sold for city taxes in 1877, 1878, and 1881 the interest on the taxes computed as authorized by the charter in force at that time, and there was included in the amount for which said land was sold for State and county taxes the interest on the taxes computed as authorized by the statute (section 1071, How. Comp.); that the amount received by the city treasurer for the purchase of the several bids hereinbefore mentioned was included by him in his monthly statement to the common council; that said monthly statement was in each case formally approved by the common council and the board of councilmen of the city of Detroit; that subsequently in each instance the amount received by the city treasurer, in selling these city tax bids, was included in the annual report of the city treasurer, which annual report was made to the common council in accordance with the charter, and was accepted, adopted, and approved by the common council and board of councilmen of the city of Detroit.

" 13. That the assessor's certificate to the assessment roll for 1878, for State and county taxes on the land in question, was as follows:

" 'I do hereby certify that I have set down in the above assessment roll the real estate in the Eighth ward in the city of Detroit liable to be taxed, according to my best information, and that I have estimated the same at what I believe to be the true cash value; that the

said assessment roll contains a true statement of the aggregate valu-
ation of the taxable personal estate of each any every person named
in said roll; and that I have estimated the same at the true cash
value, as 'aforesaid, according to my best information and belief.'

"14. That the plaintiffs had no other notice of the pro-
ceedings in said probate court under which said premises
were sold than is shown by the record, and that they did not
know that any sale or order of sale had been made until
after the defendant in this suit acquired the title under
which he claims.

"15. That said Margaret Cahill, widow of said deceased,
is still alive, and has commenced proceedings in the circuit
court for Wayne county to recover her dower in the premises
described in the declaration in this cause, which action is
now pending in said court.

"16. Among the taxes levied by the city in 1881 there was
$1,000 for a public entertainment fund, which was levied on
all the property in the city."

The record contains only so much of the testimony as
appears of record in the proceedings before the probate court.
The defendants prevailed in the superior court. The plaint-
iffs ask a review of the case in this Court, and assign as
error that upon the facts found judgment should have been
rendered for the plaintiffs; that they do not support the judg-
ment.

Counsel for plaintiffs insist, *first*, that the sale made under
the license granted by the probate court is void; that the
court had no jurisdiction to entertain the petition and make
the order for sale.

Nelson appears to have been duly appointed administra-
tor. I do not find this questioned. Neither is there any
doubt that the probate court was authorized to entertain and
pass upon the petition, and, if sufficient facts were con-
tained therein, to order a hearing, and grant the petition
if it appeared necessary.

The administrator was appointed October 15, 1877, and,
after an inventory and appraisal of the estate had been made,
on the tenth day of January, 1878, he filed his petition for
license to sell the real estate of his intestate. This petition

sets forth that an inventory of the estate and an appraisal thereof was then on file; that there was no personal estate; that, so far as he could ascertain, the deceased owed just debts to the amount of $800, which were due at the time of filing the petition, and that the charges of administering said estate would be about the sum of $100; that, to pay such debts and expenses, it would be necessary to sell the real estate belonging to the estate, or some part thereof, describing it, and giving the names of all the heirs at law and other persons interested in the estate; also their several places of residence. The petition further gives the names and places of residence of the creditors, and says that all of said persons referred to were residents of Ishpeming, in said county of Marquette. It was duly sworn to, and the officer's jurat is attached thereto.

I think this petition stated all the facts necessary under the statute to give the court jurisdiction to proceed in the matter. See How. Stat. §§ 6025–6027.

It is insisted by counsel for the plaintiffs that the indebtedness should have been found by commissioners before the petition could be filed. The report of commissioners upon claims is only necessary to enable the administrator to make payment of them without suit, and to enable the claimant to bring suit if payment is wrongfully withheld. For the purpose of making the application to sell the real estate when the estate has no personal property, and is indebted, any other competent and sufficient proof may be made of the indebtedness as well as by the report of the commissioners. Certainly there was no occasion to go before the commissioners with the expenses of administration.

The hearing on the petition was set for February 11, 1878, and an order for publication made accordingly, giving notice to all persons interested in the matter; and a hearing was obtained, after several continuances, on the 10th day of May, 1878, upon which all parties, except the creditors, interested,

appeared, and the probate court made the following order:

"State of Michigan, } ss.
    County of Marquette,

" At a session of the probate court for the county of Marquette, held at the probate office in the city of Marquette on the tenth day of May, 1878.

"Present, Edward S. Hardy, Judge of Probate.

"In the Matter of the Estate of William Cahill, senior, deceased.

" *Whereas*, E. D. Nelson, administrator of the estate of the late William Cahill, senior, deceased, having heretofore presented his petition to this court, setting forth among other things that there are sundry claims pending against the deceased requiring payment; that he has no personal property or other chattels wherewith to pay the same, nor has been able to find any that can be applied for that purpose, and therefore asking license be granted him to sell the real estate, or so much thereof as will be necessary, belonging to the estate of the deceased, for the purpose of paying said debts and the charges of administering his estate.

" And it appearing to the satisfaction of this court, by due proof on file, that due notice of a hearing of said petition has been given to all persons interested as directed by the court, and the parties having appeared in the said matter on the return-day thereof by their respective attorneys, and the said matter having then been duly heard and adjourned from time to time stated until this day, when the petition for license to sell said real estate was produced, and further examined into touching the facts and circumstances attending the sale of the real estate.

" It appears that, on the days assigned for the hearing for the proving and allowing claims against the deceased before this court, the following demands of the following persons have been and were then presented and proved before this court, and established as valid subsisting claims against the said deceased, and are the only claims that were then established, to wit: Newspaper legal advertising, $16.50; to J. M. Wilkinson, assigned Wetmore & Bros., $238.87; to Nelson, Bradstead & Co., $184.03,—amounting, in the aggregate, to the sum of $439.40, less the interest due on the several amounts; and which above-stated debts, as presented and proved before this court, have been duly adjudged valid and subsisting claims against the estate of the deceased, and for the purpose of the application for license to sell the real

estate of the deceased, the appraised value of which is $1,400, as appears by the inventory and appraisal on file.

"After hearing the allegations of M. H. Crocker, Esq., attorney for the widow and adult heirs of the deceased, and the rights and interests of the minors having been submitted to the care and discretion of this court, and all the material and essential facts and circumstances touching and appertaining to the same were duly discussed by the respective parties in interest, *pro* and *con*, and due deliberation being thereupon had, it is ordered and decreed, and this court, by virtue of the power and authority in it vested, doth order and decree, that a license for the sale of the real estate of the said deceased for the present is denied; and this court so denies the same for the following reasons: A sale at the present depreciation of real estate, and small amount required to be raised, the same would prove an injury, and an unwarranted act of injustice to the heirs and widow of the deceased.

" And it is therefore further ordered and decreed, and this court, by virtue of the power and authority invested, doth hereby order and decree, that a license to mortgage the real estate in question do issue in the premises unto the said defendant E. D. Nelson, administrator, as aforesaid, for the purpose of raising sufficient moneys for the payment of the debts as allowed against the deceased and the charges of administering his estate, the same to be subject to the approval and confirmation of this court.

" And it is further ordered that the heirs at law of the deceased shall have a first offer and preference of being the mortgagees, and six weeks from the date hereof is allowed the administrator to perfect the same.

"EDWARD S. HARDY,<br>"Judge of Probate."

It was necessary to raise money to pay the estate's indebtedness from either mortgaging or selling the real estate. The petition asked for a sale. The court, for the present, denied the license to sell, and permitted the administrator power to mortgage the property. I think this was within the discretion of the court, all the circumstances being considered. All the parties interested were heard in the matter, and the same facts are required to be set up in the petition,

whether the license is for the sale or to mortgage (How. Stat. §§ 6105, 6106); and the purpose is the same, viz., to raise money to pay the debts of the estate. An order was subsequently entered by the court directing the terms of the mortgage, and the amount for which it should be given, on the eleventh of August, 1878. No mortgage seems ever to have been given, but on the eleventh day of November, 1878, the probate court entered an order in the matter of petition for license to sell, made by the administrator, wherein the court recites the granting of the orders to mortgage, and the failure of the administrator to raise the money necessary to pay the debts in that way, and, after stating that the matter of the petition had been continued upon the previous orders of the court until that day, directs a sale of the property of the estate for the payment of the debts, which then amounted to $800.

The *second* point made against the probate proceedings is that this order for sale was void, because no notice was given of the hearing had on the eleventh of November, when the order was made.

There is no question, I apprehend, but that the court had the power to continue the matter for final order in the premises, as he did, or as the court says he did in the order. I think this recital must prevail, in the absence of any testimony to the contrary. The probate court is one of record, and its orders and decrees should have full credence in collateral proceedings where they come in issue, in a case wherein the court has acquired jurisdiction. *Osman v. Traphagen,* 23 Mich. 80; *Griffin v. Johnson,* 37 Id. 87; *Toll v. Wright,* Id. 93. Our probate practice does not require any notice of hearing upon petitions, other than the one first given for that purpose, on continuance of the matter, and none was necessary in this case for the hearing on the eleventh of November.

The *third* point made against the validity of the sale under the probate proceedings is omission to give the notice required by statute of the time and place of sale.

How. Stat. § 6040, requires publication of the notice for six weeks successively next before sale. We have before us four affidavits relating to the publication of this notice of sale, made by John Mathews, foreman of the printers of the Evening News, and when the paper was printed containing the notice. The first shows the publication of the notice May 1, 8, 15, 22, and 28, and June 5, 1879, and dated June 6, 1879. The second notice is the same as the first, except it contains an underwritten notice of the postponement of the sale to the twenty-fourth day of June, the time of the first notice having been for the tenth; and the affidavit further states that the notice was duly published on the twelfth, nineteenth, and twenty-sixth days of June, 1879. The third affidavit is attached to a notice like the second, except there is underwritten another postponement of the sale to the twenty-second day of July, 1879; and the affidavit contains the further statement that the notice was published the third, tenth, and seventeenth days of July, and is sworn to the eighteenth of July. The fourth affidavit is attached to a notice the same as the third, except that the sale is postponed by an underwriting to the twentieth day of August, 1879; and it further states that the notice was published on the twenty-fourth and thirty-first days of July and the seventh and fourteenth days of August before the sale.

From this it appears that the notice was published 15 weeks successively immediately before the property was sold, and it nowhere appears that the necessary posting of notices in the ward where the property was situated was not done. The printed notice of sale is dated on the twenty-ninth day of November, 1878, and the day therein mentioned for the sale is the tenth day of June, 1879. There was certainly time enough from the date thereof to make due publication of the

66 Mich.—27.

notice of sale. We have, however, only record evidence before us upon that subject, and from this the publication of the notice would appear to have been short one week. But this record evidence is not all the proof competent upon that subject. What further may have appeared at the circuit we are not advised by the record, and, as the case now stands, the defendant Bassett being a *bona fide* purchaser, and no fraud having been charged, and the judge of the superior court having found upon this, as well as upon the other merits of the case, for the defendants, I do not think their title should be disturbed on this ground. The deed of the administrator upon said sale was given on the ninth of October, 1879, nearly eight years ago. Four of these seven plaintiffs were of full age when all of these probate proceedings were had. The widow is still living, and now asking for dower. There seems to be no question but that the administrator was regularly appointed and acquired jurisdiction of the estate of the deceased, nor but that the defendant Bassett is a *bona fide* purchaser. Under these circumstances, I do not think there are any superior equities in the plaintiffs. There is another view taken by counsel for the defendants in relation to these probate proceedings, and urged with much earnestness, which remains to be considered. It is how far the action of the probate court can be held conclusive in this collateral proceeding to recover the possession of this land. This *is not a* proceeding *in equity to set aside the deed made by* the administrator, and the subsequent *mesne* conveyances, but an action at law, treating them all as void, and the plaintiffs ask to be restored to the possession taken under them by the defendants. The administrator's report of sale is in good form, full, and shows the proceedings regular, and all the statutory requisites complied with. This report was duly confirmed by the judge of probate. That order of confirmation has never been appealed from, and it is claimed the decision of that court cannot be reviewed in this collateral

proceeding. Whatever may be my individual convictions upon this subject, the other questions already raised and discussed must dispose of the case, and it is not proper for us now to further consider this point.

The title of defendant Bassett not having been successfully attacked, for the same reason we decline to consider further the other positions taken by counsel in the case, or as to the validity and effect of the tax titles held by said defendant, or rather in his interest, although, upon this record, I do not think it would be difficult to sustain the defense upon these. The judgment must be affirmed.

CAMPBELL, C. J., concurred with SHERWOOD, J.

CHAMPLIN, J. I do not think that the probate court obtained jurisdiction to license the sale of the real estate under the petition. The judge refused the petition to sell, but authorized the petitioner to mortgage. He had authority to refuse the license to sell, but no authority to grant a license to mortgage without a petition for that purpose. The court could not afterwards, without a new petition and notice to all interested, act upon the prayer of the petition which he had refused, and grant a license to sell.

Neither do I think that the defective notice of sale could be cured by adjournment. It is not a compliance with the statute, which was designed for the protection of parties interested, and to induce competition in bidding at the sale. For these reasons I think the judgment ought to be reversed.

MORSE, J., concurred with CHAMPLIN, J.