## MYRTIE M. NORMAN v. WILLIAM OLNEY.

*Executors and administrators—Sale of real estate to pay debts and legacies—Sufficiency of petition, license, and oath— Failure of probate judge to require bond on sale— Good-faith purchaser.*

64 553
70 418

64 553
79 639

64 553
86 259

64 553
88 154

64 553
99 593

64 553
114 27

64 553
118 180
119 673

64 553
120 653

64 553
136 4 76

64 553
152 38

1. A petition by an executor for a license to sell real estate for the payment of debts and administration expenses alleged the amount of such claims, and the necessity of such sale for want of personal property with which to pay the same.

   *Held*, in an action of ejectment against the purchaser, involving the *validity* of such sale, that the Court cannot inquire into the *truth* or *falsity* of such allegations, or interfere with the adjudication of the judge of probate thereon.

2. Where such a petition complied substantially with the statute, and contained the statutory prayer,—

   *Held*, that the insertion of an allegation that the petitioner makes it with a view to the *distribution* of the balance, not required to pay debts, will not render it void.

3. A petition by an executor for license to sell real estate for the payment of debts and administration charges fixed the same at $1,300, and asked for the sale of *all* of the real estate, valued at $8,800. A license was granted for such sale, "for the purpose of paying debts, claims, interest, and charges," in which it was recited that it appeared to the court that such sale would be for the interest of all persons interested. A legacy of $4,000, due the widow, was paid by the executor from the proceeds of the sale, and the balance accounted for on final settlement in the probate court as held for distribution, and all persons interested consented to an order of distribution, based upon such accounting, without further notice.

   *Held*, that the license was a valid order, in effect to sell the entire premises to pay legacies, debts, and charges of administration, and that the sale made thereunder was justified under How. Stat. § 6031.

4. Under How. Stat. § 6076, a sale of real estate by an executor cannot be avoided, in an action by an heir or any other person claiming under the deceased, on account of any *irregularity* in the proceedings, provided it appears—

   *a*—That the executor was licensed to make the sale by a probate court having competent jurisdiction.

*b*—That he gave a bond, which was approved by the probate judge, in case a bond was required on granting license.

*c*—That he took the oath prescribed by law before sale.

*d*—That he gave notice of the *time* and *place* of sale, as required by statute.

*e*—That the premises were sold accordingly, and the sale confirmed by the probate court, and they are held by one who purchased them in good faith.

5. Where the report of the sale of land by an executor was confirmed in June, 1871, and showed the taking of the required oath *before* sale, but the oath on file purported to have been made December 31, 1871,—

*Held*, that *oral* proof to show that the real date should be December 31, 1870, was admissible.

6. The purchasers of land at an executor's sale paid all the land was considered worth, and the sale was duly noticed and fairly made.

*Held*, that the fact that, before obtaining license to sell, the purchasers had agreed to bid a *fixed* price per acre for the land, could not affect the *bona fides* of the sale, nor interfere with others bidding higher if they desired.

7. The neglect of the probate court to require an executor to file a bond on the sale of real estate should not be allowed to affect the rights of an innocent purchaser in a collateral suit, after due confirmation of such sale; and the word "*required*," in the second subdivision of How. Stat. § 6076 (see head-note 4), refers to the requirement of a bond *by the probate court* when granting the license, and not to the *statutory requirement. Drake v. Kinsell*, 38 Mich. 236, 237.

8. The fact that an *executor* deeded land, sold at executor's sale, as *administrator*, is a mere irregularity, which cannot affect the *title* of a *good-faith* purchaser.

Error to Calhoun. (Hooker, J.) Argued January 5, 1887. Decided January 27, 1887.

Ejectment. Plaintiff brings error. Affirmed. The facts are stated in the opinion.

*Crane & Breck* (*George W. Lawton*, of counsel), for appellant.

*William H. Porter*, for defendant.

MORSE, J. Action of ejectment for the possession of the

undivided one-fifth share of 80 acres of land in Clarendon, Calhoun county.

William J. Gatchell, the father of the plaintiff, died November 9, 1865, the owner in fee of this and other lands in the said township of Clarendon. He left surviving him his widow, Annie Gatchell, and five minor children. In his will, which was duly probated and allowed, he bequeathed to his wife "four thousand dollars during her natural life, to be paid out of my estate, and after her death to be equally divided among my heirs." He also directed the payment to his mother of $52 annually. He then devised 80 acres of land (no part of the land in controversy here) to three of his children, and the remainder of his estate he divided equally among his five children. It is under this clause of the will that plaintiff claims.

One Benjamin Freddenburg was named as executor, and duly qualified as such December 18, 1865.

The defendant claims under an executor's sale of the land in question.

The circuit judge filed his finding of facts and law, and rendered judgment in favor of the defendant.

From these findings it appears that November 16, 1870, said executor filed a petition for license to sell real estate. Said petition alleged that the personal estate of the testator was practically exhausted, and that there remainded due and outstanding against said estate the sum of $800, debts of the testator, and about $500, estimated expense of administration, and that it was necessary to raise the sum of $1,200 from the sale of real estate; and prayed that the executor might be allowed to sell all the real estate, amounting in value, as alleged therein, to $8,800.

December 31, 1870, a hearing was had upon said petition, upon proper notice by publication. The judge of probate adjudged that the debts and valid claims against said estate amounted to $800; that the personal property was insufficient

to pay the same; and that it was for the interest of all inter-ested in the real estate that it should all be sold. The license to sell was granted, and it was ordered that the executor take and subscribe the oath required by law before sale, but was silent respecting the filing of a bond, the printed provision for said bond being erased.

The executor made sale on the eighteenth of February, 1871, of 220 acres, including the 80 in question, to George Born, for the sum of $8,800. Publication and posting notices of this sale were made as required by law.

The oath on file was dated December 31, 1871, and purport-ed to be filed December 31, 187—, the place for the fourth figure of the year being blank.

The report of sale, filed June 29, 1871, shows that the oath was subscribed and taken before sale, such statement being in the printed portion of the blank used in making said report.

June 29, 1871, the sale was confirmed, and on the same day a deed was acknowledged by Freddenburg to George Born; the deed being dated February 18, 1871, and conveying the 220 acres of land.

November 21, 1871, George Born and wife, by warranty deed, in consideration of $500, conveyed the land in contro-versy to the defendant, who at once went into possession of the same, and has ever since held the same, to the exclusion of plaintiff.

Plaintiff was born October 10, 1861. Previous to the com-mencement of this suit she demanded of defendant that she be let into the possession of the undivided one-fifth of said premises, and such possession was refused by him.

November 14, 1878, the final account of the executor was examined and adjudicated by the probate court. An order of distribution was made, whereby the guardian of plaintiff and her brother was awarded the sum of $2,564.28, as their share of said estate. The order recites that all the heirs and

parties interested in said estate were present, and consented to said order. The $8,800 received on the sale of said lands were credited to said estate, and formed a part of the amount in the executor's hands at the time the order of distribution was made.

The widow and children resided on the premises in question until September, 1869, when the widow remarried, and moved out of the State. The plaintiff and other minor children went with her.

The probate court appointed commissioners on claims. They reported August 31, 1866, and allowed claims to the amount of $1,300. No evidence was given upon the trial of any other debt or debts filed or claimed against the estate, and the reports and accounts of the executor, made and filed before and after the sale, show the payment of no other debts by him than those allowed by the commissioners.

March 29, 1869, the executor reported under oath that all of said claims so allowed were paid, which report is recorded in the probate office.

Soon after the executor received his said trust, he rented the premises to defendant, who entered upon them.

In 1870, Born and defendant, both brothers-in-law of the executor, promised him that they would bid $40 per acre for the 220 acres at the sale. The land was appraised in the inventory at $8,800. No bond was given on the executor's sale. The probate proceedings upon such sale are made a part of the findings, and from them it appears that all the papers except the oath are properly dated. The notices of sale speak of it as an "administrator's sale," and were signed, "Benjamin Freddenburg, Administrator." The deed is executed by said Freddenburg as administrator, and he so describes himself in said instrument. The said executor has not yet been discharged from his trust. His account shows that, after said sale, he paid the interest upon the legacy of $4,000 to the widow each year, and at the time of

his accounting, in 1878, he held the said principal sum in trust for her.

The counsel for appellant, in the oral argument, and in his brief filed in this Court, attacks the sale, and claims the same to be void—

1. Because the petition gave the court no jurisdiction to license the sale.

2. The license is void because the probate court found $800 of subsisting debts against the estate, when in fact there were no debts.

3. Because on the face of the petition and license more land is asked and authorized to be sold than was necessary to pay the debts as fixed by the court.

4. For the reason that no oath was taken and filed before sale.

5. Because Born and Olney were not purchasers in good faith.

6. Because the sale was in fraud of the rights of the devisees.

7. Because no bond was given on the sale.

8. Because he did not sell or deed as executor, but as administrator.

We will examine the alleged defects in their order.

1. It is contended that the petition shows upon its face a sufficiency of personal property to pay the expenses of administration; that it asks for more land to be sold than was necessary to pay the alleged debt of $800, and the expenses of administration; that the records of the probate court show the falsity of the statement in said petition that there is a debt to that amount; that the statute of limitations had attached, and discharged the lands from all liens of debt, and liability of sale therefor; and also that the petition asks for the sale of devised lands, and more than was necessary to pay the alleged debts, and " with a view to the distribution of the avails thereof."

The petition shows upon its face that there is not personal property enough to pay the alleged debts, and we cannot inquire into the truth or falsity of the averments of the peti-

tion, or interfere with the adjudication of the judge of probate thereon. *Palmer v. Oakley,* 2 Doug. (Mich.) 433; *Howard v. Moore,* 2 Mich. 226; *Coon v. Fry,* 6 Id. 506; *Woods v. Monroe,* 17 Id. 238; *Osman v. Traphagen,* 23 Id. 80; *Griffin v. Johnson,* 37 Id. 90; *Toll v. Wright,* Id. 93.

It is contended that it was not necessary to sell all the lands to pay debts and charges of administration, and it so appears from the petition, which estimates these debts and charges at $1,300, and asks for the sale of real estate valued at the sum of $8,800. It is claimed that there is no statute authorizing the sale of testate lands for the purposes of distribution.

Section 6050 of Howell's Statutes (section 4570, Comp. Laws 1871) provides, in substance, that the real estate of a testator may be sold, if personal estate is insufficient, to pay any legacy, or the debts and charges of administration, and that the real estate of an intestate may, in the discretion of the court, be sold for purposes of distribution.

The petition in this case contained the following statement:

"And your petitioner further says that, in petitioning to sell all the real estate of said deceased, he does it with a view to the distribution of the balance over and above the amount necessary to pay the debts."

The prayer is, however, confined to leave to sell to pay debts and charges of administration. We do not think the petition was void because of this statement. The petition was substantially in compliance with the statute, and, without this statement, only prayed for a sale authorized by the statute.

But the license granted by the probate court authorized the sale of the whole 220 acres, and it was all sold to one purchaser, under such license, "for the purpose of paying debts, claims, interest, and charges," and contains the following recital: "And, it appearing to the court that it would be

for the interest of all persons interested in said estate to have all the same sold," therefore the sale is ordered, etc.

It is argued that the order for the sale of all the lands was made for purposes of distribution, and under the clause of section 6050, How. Stat., referring to the lands of intestates, and that the court had no jurisdiction to make such order in this case. It appears, however, that the $4,000 legacy to the widow had not been paid at the time of this sale, and was subsequently paid or held in trust out of the proceeds of such sale. The lands sold were, by the terms of Gatchell's will, burdened with the payment of this legacy, if there was not sufficient personal property to pay it.

At the time of the granting of this license a statute existed (section 4551, Comp. Laws 1871, being section 6031, How. Stat.) authorizing the probate court, when it was necessary to sell part of the real estate, and by such sale the residue would be greatly injured, to order a sale of the whole estate. It is plain from the record in this case that it was necessary to sell this real estate, not only to pay the alleged debts and charges of administration, but this widow's legacy as well, and that it was for the interest of all concerned that the whole estate be sold together.

The legacy was paid out of the avails of the sale, and the balance accounted for and held for distribution by the executor; and the final order upon the accounting shows that all the parties interested were present in person or by guardian, and consented that the order of distribution be made, based upon such accounting, without any further notice. Under these circumstances we shall hold that the license was a valid order, and, in effect, an order to sell the whole of the premises, to pay legacies, debts, and charges of administration, and that, under the statute above cited, it will be considered that the sale of the whole was justified, "and most for the interest of all concerned." We shall not avoid the sale for a mere technicality of expression, or a want of it, in

the petition or license, when the ends really worked out and subserved by the action of the probate court come clearly within the statutes. How. Stat. §§ 6031, 6036.

By our statutes the sale of any real estate by an executor, in an action by an heir or any other person claiming under the deceased, contesting the same, shall not be avoided on account of any irregularity in the proceedings, provided it shall appear—

1. That the executor was licensed to make the sale by a probate court having competent jurisdiction.

2. That he gave a bond approved by the judge of probate, in case a bond was required upon granting a license.

3. That he took the oath prescribed by law before sale.

4. That he gave notice of the time and place of sale, as required by the statute.

5. That the premises were sold accordingly, and the sale confirmed by the probate court, and that they are held by one who purchased them in good faith. How. Stat. § 6076; Comp. Laws 1871, § 4596.[1]

We find the petition sufficient to confer jurisdiction upon the court, and also that such court did not exceed its jurisdiction in the license granted. *Dexter v. Cranston,* 41 Mich. 448; *Blanchard v. DeGraff,* 60 Mich. 107. We also find that the court had not lost jurisdiction by the lapse of time. *Pratt v. Houghtaling,* 45 Mich. 457; *Church v. Holcomb,* Id. 29; *Larzelere v. Starkweather,* 38 Id. 96.

2. We cannot examine, in a collateral issue like the present, the finding of the probate court as to the existence of debts against the estate, or the amount of them.

3. This objection has been disposed of in our discussion of the first point raised.

4. It would naturally be suggested to the mind of any one, by the examination of the proceedings before and after sale, as shown by the files and records of the probate court, that the date of the oath, December 31, 1871, was a clerical error,

---

[1] See *Blanchard v. DeGraff,* 60 Mich. 107; *Goodall v. Henkel,* Id. 382.

and that its real date was December 31, 1870.   Testimony to this effect was admitted, and the court found that it was taken and subscribed of this date.   Objection was made to the reception of the oral proof to establish this fact.   We have no doubt of its competency.

5. There was absolutely no evidence tending to show that Born and the defendant were not purchasers in good faith. On the contrary, they paid for the land all that it was considered to be worth, and the only thing urged against the *bona fides* of the transaction on their part is the fact that they agreed to bid $40 per acre if the executor would obtain license from the court to sell it.   The sale, however, was properly noticed according to law, and such agreements to bid are often secured before sale by executors and others at judicial sales.   Such an agreement could not and did not interfere with others bidding higher if they so desired.

6. We do not think the sale was in fraud of the rights of the devisees, nor that the testator intended, as claimed by the counsel for appellant, that these premises should pass to his children, and not be sold.   By the terms of his will, and the condition and amount of his estate, his will, in which the first provision was the legacy to his wife, could not be carried out without such sale.   The widow's legacy could not be paid without resort to this real estate.

7. This objection seems to me to be the most meritorious of any.   How. Stat. § 6032 (Comp. Laws 1871, § 4552), provides:

" When the executor or administrator is authorized to sell more than is necessary for the payment of debts, he shall, before the sale, give bond to the judge of probate, with sufficient sureties, to account for all the proceeds of the sale that shall remain after payment of the debts and charges, and to dispose of the same according to law; and, in all cases where license is granted for the sale of real estate, the judge of probate may require a further bond from the executor or administrator when he shall deem it necessary."

In this case the judge of probate, in his order granting the license, saw fit to require no bond, and struck out the printed provision for one usually found in the printed blanks for such orders.    No bond was given.    The counsel for plaintiff argues with much force that, it being admitted in this case that more lands were sold than were necessary for the pay-ment of the debts and legacies, the bond should have been required by the judge of probate, and given by the executor, in order to confer upon him authority to sell; that the pro-vision requiring such bond is plainly mandatory, and cannot be disregarded by the probate court; that the want of such bond goes to the jurisdiction, and is not a mere irregularity. But the statute (How. Stat. § 6076) does not provide that the bond must be given as required. *by the statute.*    The *second* paragraph of that section reads as follows:

"That he gave a bond, which was approved by the judge of probate, in case a bond was required upon granting a license."

It was intimated by this Court, in *Drake v. Kinsell*, 38 Mich., at pages 236 and 237, that this statute, in speaking of the bond as being "required," intended a requirement of the judge of probate when granting the license; and that, if none was directed by him to be given, the failure to give one can-not be a fatal defect.    The point was not adjudicated, how-ever, as it was not deemed necessary in that case.    In my opinion, this interpretation of the statute is the one most consonant with justice and authority.    The neglect of the probate court to require a bond should not be allowed to affect the rights of an innocent purchaser under an execu-tor's sale in a collateral suit, after such sale has been duly confirmed by the probate court.    The statute (section 6076, How. Stat.) was evidently framed for the purpose of protect-ing sales of this kind, as far as possible, where the sale of the premises had been confirmed, and the lands are held by persons purchasing at such sale in good faith.    It must be

considered that the most liberal construction of the language, in favor of such purchaser, and against the heir, was intended. See *Palmer v. Oakley,* 2 Doug. (Mich.) 433, 495; *Perkins v. Fairfield,* 11 Mass. 226; *Stall's Lessee v. Macalester,* 9 Ohio, 19; *Ludlow's Heirs v. Johnson,* 3 Id. 553.

8. The fact that Freddenburg deeded as administrator, instead of as executor, is a mere irregularity, which cannot affect defendant's title.

In this case the sale was, in all its proceedings, conducted in a fair and just manner by the executor. The premises were sold for a fair price, and every dollar accounted for by the executor. There can be no fault found with his management of the estate, or the execution of the trust. No one has been defrauded or injured in the least by this sale, or the disposition of its proceeds. It is sought, upon technicalities alone, to avoid the sale, and wrest from the purchaser one-fifth of the lands which he has held, occupied, and improved under the sale for over 12 years before the commencement of this suit. There is no merit in plaintiff's claim, and courts should not favor the disturbing or destructon of titles obtained at executors' or administrators' sales upon mere technicalities, or the omission of acts, when such omission has caused no injury.

The judgment of the court below is affirmed, with costs.

CAMPBELL, C. J., and CHAMPLIN, J., concurred. SHERWOOD, J., did not sit.