GUSTAV SCHAALE v. GEORGE E. WASEY AND JOHN KING.

*Guardian and ward—Sale of real estate to pay debts—Collateral attack upon validity of proceedings—Publication of notice in German newspaper—Bond before sale—Clerical error in date of filing—Posting notices of sale —Judicial notice as to city ward in which building is located.*

1. Where the petition of a guardian for license to sell the real estate of his wards did not conform to the strict terms of *either* of the statutes authorizing such a sale, but the intent of the sale as one made to pay the debts of the wards was apparent from the fact that the proceeds were used for such purpose and for the support of the wards, no order being made for their investment, the proceeding will be treated as had under the statute authorizing a sale for the payment of debts.

2. Where the validity of a guardian's sale of real estate, made pursuant to chapter 101, Comp. Laws of 1857, is attacked by a party claiming under the wards, all the proceedings leading to the issuance of the license to sell are *conclusively* presumed to be proper and valid. *Blanchard v. DeGraff*, 60 Mich. 107.

3. The indorsement of the date of the filing of a guardian's bond before sale of real estate, as of a date subsequent to such sale, is held to be shown to be a clerical error by the other proceedings in the case. *Norman v. Olney*, 64 Mich. 553

4. While the publication of a notice of guardian's sale of real estate in a newspaper mainly published in a foreign language (said notice being published in English) is improper under our statutes, the Court is not prepared to say that it violates a good-faith sale, legally made in all other respects, when attacked collaterally, and without a showing of a want of bidders or inadequacy of price.

5. The Court cannot take judicial notice that a certain building mentioned in an affidavit of posting a notice of guardian's sale of real estate is situated in a certain city ward, and in the absence of proof upon the subject it must be presumed that the judge of probate had proper evidence before him of a legal posting of such notice before confirming such sale.

Error to Wayne. (Jennison, J.) Argued April 5, 1888. Decided May 23, 1888.

Ejectment. Plaintiff brings error. Affirmed. The facts are stated in the opinion.

*Harry F. Chipman* (*William Look*, of counsel), for appellant.

*H. P. Davock* (*Conely, Maybury & Lucking*, of counsel), for defendants.

[The points of counsel are stated in the opinion.— REPORTER.]

MORSE, J. Plaintiff brought ejectment, claiming the title in fee to lot 9 in block 20 of the Crane & Wesson section of the Forsyth farm. The plea was the general issue, with notice of the statute of limitations.

The case depends upon the validity of certain probate proceedings in a guardian's sale of the land. The land was owned by Adolph Schaale at the time of his death, in 1864. It was the only property of which he died possessed, except a horse and wagon valued at $200. He left a widow and four children. One of the children, Pauline, died in the same year as her father. The names and ages of the other children, at their father's death, as near as such ages can be ascertained, were: Louise, six years old; Emma, four years old; and Gustav, the plaintiff, three years of age. The widow, about a year after the death of Schaale, married one Christian Tappert. The probate court of Wayne county appointed Theodore B. Herz, an uncle of the children, their guardian. The land was sold by him under license from that court, in April, 1869, and bid in by Tappert for $1,805.

Plaintiff claims under his own heirship and the purchase of the interest of his sisters

Tappert mortgaged the property, and the premises were sold under such mortgage by sheriff's sale upon foreclosure, and deed executed to John Oesterling, October 30, 1874. November 8, 1875, Tappert and Oesterling conveyed to

Joseph Kuhn.   Kuhn deeded to Henry Hansen, March 25,. 1878, but Hansen conveyed the premises back to Kuhn, July 8,. 1878.   Kuhn conveyed the land to Edward A. Gott, trustee, in 1884, and Gott deeded to the defendant Wasey.   King is made defendant, as a tenant, occupying the premises under Wasey.   Two mortgages, executed by Kuhn while he owned the premises, are still in existence, and a lien upon the land if the guardian's sale was valid ; one of $2,000 to one Starkloff and wife, and one for $1,000 to one Guth and wife.   The property has been in the possession of Tappert and those claiming under him, since April 14, 1869, the date of the guardian's deed.   This suit was commenced in 1886.

Wasey paid $3,460 for the premises, subject to the mortgages.   Wasey bought in good faith, relying upon the validity of the guardian's sale, and the mortgagees in both mortgages advanced the stated consideration for the same to Joseph Kuhn, with no notice of any flaw in his title except what the record may have disclosed.   The $1,805 received from the sale of this land by Herz was accounted for in the probate court as being expended for the support and benefit of the children, which account was allowed and approved by the court.   There is nothing in the record to show that he did not faithfully perform his trust.   The land was sold by him for more than it was appraised, and undoubtedly for a fair price.

The circuit judge directed a verdict for the defendants.

The objections against the validity of the guardian's sale, as made here, will be discussed in their order, as pointed out in the brief of plaintiff's counsel.   The petition to sell set forth that the premises were—

"Incumbered with a mortgage amounting to $500, and interest due thereon, and also that a levy for paving Grand River street, amounting to $300, or thereabouts, is made upon the premises; that the rent (income) obtained and obtainable is insufficient to defray all the expenses required for the support (maintenance) of said minors and the good

management of their estate; that it is necessary for the best interests of the said minors to sell the said estate."

The plaintiff's counsel claim that this petition was filed, and that the sale was ordered and took place, under chapter 78 of the Revised Statutes of 1846 (Comp. Laws of 1871, chapter 164; How. Stat. chapter 230), entitled " The Sale of Lands of Minors and Other Persons under Guardianship, and Investing the Proceeds for Their Use;" while the counsel for defendants insist that the petition, order, and sale were made under chapter 77 of the Revised Statutes of 1846 (Comp. Laws of 1871, Chap. 163; How. Stat. Chap. 229), entitled "The Sale of Lands for the Payment of Debts by Executors, Administrators, and Guardians." There is some difference in the method of procedure in the two chapters, and it is therefore desirable to determine to which the proceedings in this case belong.

We think the view of the court below was correct that the purpose and object of this sale was for the payment of debts against the estate, and not for the purpose of investing the proceeds. It is true, the mortgage upon the land was placed there by the guardian, but it was so placed under the order and sanction of the probate court, and for the support of the minors. This and the paving tax were legitimate debts against the wards' estate. The proceeds of the sale were not invested, or ordered by the court to be invested, but were used up in paying these debts, and in the support of the children. Whether rightfully so used or not we cannot inquire in these proceedings. The petition does not conform to the strict terms of the statute in either case, but the intent of the proceedings is plainly apparent, as shown above. We shall therefore treat the proceedings as being had under chapter 77, Rev. Stat. of 1846 (Comp. Laws of 1857, chap. 101). In this case the guardian was licensed to make the sale by the probate court having competent jurisdiction of the subject. Subd. 1, § 6076, How. Stat.; *Toll v. Wright,* 37 Mich. 93; *Dexter v.*

70 MICH—27.

*Cranston,* 41 Id. 448 (2 N. W. Rep. 674); *Ellsworth v. Hall,* 48 Id. 408 (12 N. W. Rep. 512); *Blanchard v. DeGraff,* 60 Id. 107 (26 N. W. Rep. 849). Under these authorities the sufficiency of the petition cannot be attacked in this action.

The order to show cause, issued upon the filing of the petition, conformed to the statute, as the proceedings were under chapter 77 of the Statutes of 1846. It notified all persons to appear who were "heirs at law of said minors, and all persons interested in the estate." How. Stat. § 6066. But under the authorities above cited all the proceedings leading to the issuing of the license to sell are conclusively presumed to be proper and valid. This also disposes of the point raised upon the publication of the order to show cause why the license should not be granted.

It is claimed that no proper bond was given before the sale. The bond is dated November 25, 1868, but the filing upon the same in the probate court is dated as approved and filed on November 25, 1869. The license was issued and the bond ordered on November 24, 1868. The date of the filing and approval of this bond must be considered as a clerical error. In the report of sale made on April 14, 1869, the guardian makes oath that he had given the bond, and that it had been approved. And in the confirmation of sale, April 14, 1869, the probate judge recites that the bond had been given and approved. See *Norman v. Olney,* 64 Mich. 553 (31 N. W. Rep. 555); *Persinger v. Jubb,* 52 Id. 304, 308 (17 N. W. Rep. 851).

The oath before sale was taken and subscribed April 14, 1869. The report of sale and confirmation both recite that such oath was taken and subscribed before sale. It being dated upon the same day as the sale, the presumption would also be that it was made before the sale. The statute was therefore complied with. How. Stat. § 6072.

The publication of the notice of sale, and the posting of notices, it is claimed, were not in accordance with the statute.

The notice was published in the Michigan Volksblatt, a paper mainly published in the German language, and circulating in the county of Wayne. The notice, however, was published in English. The affidavit on file in the probate court as to the posting of the notices shows that three notices of the sale were posted in the city of Detroit at the following places: One on bulletin in Wayne county court-house, one on bulletin in city hall, and one on front of office, 46 Monroe avenue.

It is conceded that the notice must be published in the English language, and it was so published; but the counsel for the plaintiff argues that the intention of the statute (Comp. Laws of 1871 § 5683; How. Stat. § 7251) was that such notice should be published not only in the English language, but in a newspaper published in that language. He contends, with much force, that the object of such a publication is to acquaint the people of the proceedings about to be taken, and that, the great mass of our people speaking and reading only the English language, the object of the law is defeated by its publication in a German newspaper; that such newspaper only circulates among the German reading portion of our population, and the notice, being in English, cannot be read or understood by many Germans, and consequently the notice, published as this one was, would not be seen or read by the great mass of the people; and that, being published in English in the Volksblatt, it would not thereby gain as much publicity as if it had been therein published in German; so that all the German reading people would have understood it. He cites *Beecher v. Stephens*, 25 Minn. 146, and *Graham v. King*, 50 Mo. 22, in support of the proposition that such a publication is not a valid one. The first case decides that the Northwestern Reporter is not a newspaper in the sense and understanding of a statute providing for publication of notice in "a newspaper published in the county where the action is brought." In *Graham v. King* the notice was inserted in English, as in this case, in a German news-

paper. The publication was held bad in a proceeding to enjoin a trustee from executing a deed to the purchaser at the sale under such notice.

This is not a direct proceeding to set aside a sale, or to enjoin a party from proceeding to a sale, or the execution of a deed after a sale, but a collateral attack after a period of nearly 17 years. We do not think such a publication as the one in this case a proper one under our laws, but we are not prepared to say that it vitiates a good-faith sale, legally made in all other respects, especially when such sale is attacked collaterally, and there is no evidence showing a want of bidders at such sale, or any inadequacy of price in the sale.

In relation to the posting of notices, the counsel claims that the property sold was situated in the Eighth ward of the city of Detroit, and that by the affidavit it appears that none of the notices were posted in that ward, two of the places being in the Second ward, and the other in the First ward.

We find, however, no evidence in the record showing in what ward this property was located, or in what wards the places mentioned in the affidavit were situated at the time of the posting of such notices. We cannot take judicial notice that any certain building in the city of Detroit is situated in a certain ward. There being no proof upon this subject, it must be presumed that the judge of probate had proper evidence before him that the requisite notices under the statute were posted in the ward in which the land was located, as he confirmed the sale. At least, we cannot go outside of the record to ascertain that the notices were not posted in the proper ward, after a lapse of nearly 20 years, when the boundaries of the wards are frequently changed, and that, too, by local action or local laws.

We have now noticed all the points urged against the validity of the probate proceedings, and find none of them well taken.

The judgment of the court below is therefore afirmed, with costs.

SHERWOOD, C. J., CHAMPLIN and CAMPBELL, JJ., concurred.