## N. FREDERICK HUGO *vs.* ALLEN J. MILLER.

Argued May 3, 1892.   Decided June 1, 1892.

**Presumption from a Change in a Statute.**

A change in the phraseology of a statute made by means of a general revision of the entire body of the law cannot be regarded as so clearly indicative of a special design and purpose on the part of the legislature as when the change is made by direct amendment.

**Administrator's Oath, when Licensed to Sell Land.**

An administrator licensed to sell real estate under the provisions of 1878 G. S. ch. 57, § 1, etc., in due time took and subscribed to an oath that in making such sale he would "exert his best endeavors to dispose of the real estate　\*　\*　\*　in such manner as will be most advantageous to the persons interested" in the estate.   *Held* to be, in substance, the oath prescribed in section 45 of said chapter.

**Affidavit of Publishing and Posting Notice of Sale.**

The affidavits of publishing and posting notices of sale in this case examined, and *held* sufficient.

**Order Confirming Sale, its Effect.**

Where the affidavit of posting points out to the probate court the exact places of such posting, and the court, its duty being to pass upon the sufficiency of the notice as well as the regularity of the sale itself, is satisfied that the places named are three of the most public places in the county, and has so found and recited in its order of confirmation of the sale, the determination of the court on the mere question of the publicity of these places must be held conclusive in all collateral proceedings.

Appeal by defendant, Allen J. Miller, from a judgment of the District Court of St. Louis county, *Severance,* J., entered March 22, 1892, decreeing plaintiff, N. Frederick Hugo, to be the owner in fee of seven-ninths of lot thirty-two (32) on east Second street in Duluth Proper, 1st Division.

Henry E. Scott died intestate August 23, 1876, seized in fee of this lot, leaving him surviving a wife and three sons, his only heirs. Seward D. Allen was in 1883, appointed by the Probate Court of St. Louis county, administrator of Scott's estate.   In June, 1884, that Court licensed the administrator to sell this lot, for the payment of

debts.   He gave a sale bond and took the oath stated in the opin-
ion.   He published and posted notice of sale as therein stated, and
on August 4, 1884, sold the lot pursuant to the notice to Mary A.
Miller for $425.   He made report of the sale and it was confirmed,
and as administrator he executed and delivered to her a deed, which
was duly recorded.   She afterwards conveyed to the defendant.

On  March 23, 1889, the widow and two of the sons quitclaimed
to Nathaniel Gearhart, and he conveyed to plaintiff.   The other son
quitclaimed to the defendant.   This action was to determine the ad-
verse claim of defendant to seven-ninths of the lot under the admin-
istrator's sale.   The District Court held the sale void, and gave the
plaintiff judgment.

*Cash & Williams*, for appellant.

The Probate Court directed the notice of sale to be published for
three weeks successively next before the sale, in the Lake Superior
News, a weekly newspaper.   The affidavit shows that it was pub-
lished once in each week in the paper designated, for three succes-
sive weeks.   The first and last days of publication are given, and
they are two weeks apart.   The paper being a weekly one, the mid-
dle publication must of necessity have been one week from the first
and from the last.   The Probate Court found as a fact that the no-
tice was published as directed, and confirmed the sale.   There is
nothing in the affidavit of posting inconsistent with the fact of post-
ing in three of the most public places in the county, and there is
nothing in the affidavit of publication inconsistent with the fact of
publishing once a week for three weeks successively.   Were it not
for 1878 G. S. ch. 57, § 51, the order of confirmation would be con-
clusive in favor of the purchaser.   *Davis* v. *Hudson*, 29 Minn. 27, 39.

The proof shows the notices to have been posted in three public
places, specifying them, but does not state that these were the most
public places in the county of St. Louis.   The proof was sufficient.
The places having been pointed out where the notices were posted,
the Probate Court accepted them as sufficient.   The question cannot
be raised in this action.   *Schaale* v. *Wasey*, 70 Mich. 414; *Dexter* v.
*Cranston*, 41 Mich. 448; *Richardson* v. *Butler*, 82 Cal. 174.

We admit that the oath does not strictly conform to the letter of the law, but it does substantially comply with the spirit of the statute. Using good judgment as to fixing time and place of sale is indispensable, in order that the property may be disposed of, in such manner as will be most advantageous to the persons interested. The oath was taken before the time and place of sale was fixed. It would no doubt be much safer to follow the language of the statute. But be that as it may, the defect, if any, is cured by Laws 1889, ch. 196. *Streeter* v. *Wilkinson,* 24 Minn. 288; *Kimball* v. *Rosendale,* 42 Wis. 407, 413.

*Wm. B. Phelps,* for respondent.

The order of license required the notices of sale to be posted in the most public places in the county. They were posted in the most public places in Duluth. The Court finds that the proofs presented to the Probate Judge did not show a compliance with the order of license nor with the statute. Publishing a notice three weeks successively next before sale, is not shown by an affidavit stating publication once in each week for three successive weeks.

No affidavit such as was required by 1878 G. S. ch. 57, § 45, was made or filed by the administrator. 1858 C. S. ch. 39, § 22, required that the affidavit of the administrator should state that in disposing of the real estate, which he is licensed to sell, he will exert his best endeavors to dispose of the same, in such manner as will be most for the advantage of all persons interested. 1866 G. S. ch. 57, § 41, in force at the time of the sale, required the affidavit of the administrator to state, that he will use his best judgment in fixing on the time and place of sale, and will exert his utmost endeavors to dispose of the same in such manner, etc. The addition made by the revisors to the previous statute relates to the fixing of the time and place of sale, and the legislature in enacting it evidently regarded this change material. The affidavit in this case is silent as to fixing the time and place of sale, and therefore, is not such an affidavit as the later statute required. *Montour* v. *Purdy,* 11 Minn. 384, (Gil. 278;) *Hartley* v. *Croze,* 38 Minn. 325.

Laws 1889, ch. 196, provides that in any action relating to real

estate sold by an administrator, the sale shall not be held invalid because of the failure of the administrator to take the oath prescribed by 1878 G. S. ch. 57, § 45.   This statute attempts to make valid, judgments and proceedings of the Probate Court which were void. It is not competent for the legislature thus to assume judicial functions.   *Pryor* v. *Downey,* 50 Cal. 388; *Meighen* v. *Strong,* 6 Minn. 177, (Gil. 111;) *Thompson* v. *Morgan,* 6 Minn. 292, (Gil. 199;) *Wistar* v. *Foster,* 46 Minn. 484.

The curative act above referred to was approved April 24, 1889, and the deed to Gearhart bears date March 26, 1889, and was filed in the office of the Register of Deeds of St. Louis county April 2, 1889.   If the curative act operated on this sale, the effect of it was, to divest the title of Gearhart and bestow it on the defendant.   The conveyance to Gearhart was an executed contract.   The state legislature cannot annul or diminish the effect of a valid conveyance, for this would be to impair the obligation of a contract.   Story, Const. § 1376; *People* v. *Platt,* 17 John. 195; *Grogan* v. *City of San Francisco,* 18 Cal. 590; *City of Louisville* v. *President, etc., of the University of Louisville,* 15 B. Mon. 642; *Fletcher* v. *Peck,* 6 Cranch, 87; *Ballard* v. *Ward,* 89 Pa. St. 358.


COLLINS, J.   Action to determine an adverse claim made to a city lot.   The defendant's claim of title to the entire property was based originally upon an administrator's sale made in the year 1884, and the validity of this sale is the question now before us.   Below it was declared invalid, the court holding plaintiff to be the owner of an undivided seven ninths, and defendant, through a conveyance from one of the heirs, the owner of the remaining two ninths.   This result which was embodied in the judgment as ordered and entered, was inevitable, unless the sale can be sustained.   There were three main objections to the proceedings, and these will be considered in their order, and, as preliminary,—for it will have to be stated somewhere in the opinion,—it may be well to observe that the sale in question was duly confirmed in the probate court, by an order in which all of the requisites of a valid sale were specially mentioned, and were stated to have been complied with by the administrator when making

the sale. On the trial the defendant, in support of his claim of title, produced in evidence the order of confirmation, and, among other things, three certain affidavits found in the files of the proceedings in probate court,—one being the oath or affidavit taken and subscribed by the administrator before fixing on the time and place of sale; another being that of the administrator, in respect to the posting of three notices of sale; and the third that of a printer, in regard to the publication of the notice of sale. The plaintiff rested his contention that the sale was unauthorized and irregular upon the contents of these three affidavits, making no proof himself of any irregularities, and claiming that fatal defects in the proceedings, sufficient to vitiate the defendant's title, asserted through the sale, had fully and conclusively been made to appear by their production in evidence. These affidavits we will proceed to consider.

1. The statute in force when this sale took place (1878 G. S. ch. 57, § 45) required of the administrator, before fixing upon the time and place of sale, that he take and subscribe an oath, "in substance, as follows: That in disposing of the estate * * * he will use his best judgment in fixing on the time and place of sale, and will exert his utmost endeavors to dispose of the same in such manner as will be most for the advantage of all persons interested." The oath or affidavit before mentioned as that produced by defendant upon the trial was that the person taking the same, the administrator, "will exert his best endeavors to dispose of the real estate * * * in such manner as will be most advantageous to the persons interested" in the estate. It will be noticed that no reference was specially made in the affidavit to the matter of fixing on a time and place of sale; but otherwise the affidavit closely followed the language of the statute. In terms, a literal adherence was not required, but it was essential that, in substance, the oath be that prescribed in section 45, *supra.* We have therefore to first consider and determine whether there was a substantial compliance with the statute in the wording of the affidavit, which was subscribed and sworn to by the administrator before he proceeded to fix and to give notice of the time and place of sale. In a legal sense, the substance of a statutory requirement is that which is essential in order

to comply with it. The words "in substance" are used in opposition to form, and to signify that adherence to the form or language of the statute is not required if the real or essential part be observed and complied with. What, then, under the oath which was actually taken, was required of the administrator in the conscientious performance of his duty? Could he honestly and lawfully exert his best endeavors to dispose of the property in such manner as would be most advantageous to the persons interested in the estate, as he was sworn to do, without using his best judgment when determining upon the time and the place of sale? or, stating it in another form, could the administrator in this case have exerted himself, and have endeavored to make the sale in the most advantageous manner, without fixing upon the best time and the most desirable place, in his judgment, for the same? If he could have so done, it must be because his sworn duty, as determined by the language of his oath, would have been performed by his exertions at the sale, and that to perform this duty he was not obliged to take any steps whatsoever to attract bidders and induce competition, steps which have always been regarded as very necessary to a fair and valid public sale. We are of the opinion that an administrator who was accused of being derelict in the performance of his duty in respect to determining upon a proper time and place of sale would not attempt to and could not safely shield himself behind an oath of the character of the one now under consideration, by insisting that it did not demand of him the use and exercise of his best judgment in all things respecting the sale, including the fixing of a desirable time and place for the same. The oath, therefore, which was taken and subscribed by the administrator in due time, was, in our opinion, a substantial compliance with the statute. It was certainly much nearer the language of the statute, in substance, than was the oath taken by the guardian, and held good, in *Montour* v. *Purdy*, 11 Minn. 384, (Gil. 278.)

But attention is called by respondent to the fact that the words which were omitted by this administrator were imported into the law as it had previously existed, (1858 C. S. ch. 39, § 22,) by legislative enactment, (1866 R. S. ch. 57, § 41,) and he urges that

for this reason it is manifest that the legislators intended to make the imported words an essential feature of the oath thereafter to be taken, not to be omitted with safety, because of the substance. On first impression, there is force in this line of argument, but every change of phraseology in a statute does not indicate a change of substance. The change may be made to express more clearly the same intent, or, possibly, to improve the diction. The changes may result from a variety of causes, and hence the presumption of a change of intention from a change of language is of no great weight, and it must mainly depend on the intrinsic difference, as resulting from the modification. The intent to change the law must be evident and certain; there must be such a substantial change as to import such intention, or it must otherwise be manifest from other guides of interpretation, or the difference in phraseology will not be deemed expressive of a different intention. Suth. St. Const. § 256, and citations. Again, this change was not made by a direct amendment to the particular statute by the legislature, and from which the intent may sometimes be gathered, but by a general revision of the entire body of statute law. This revision, including the section in question, was primarily the work of a commission, and was then adopted as the work of the legislature; and revisions, as has been said by the author of the text-book just referred to, naturally involve some modification of expression to bring the laws into system and uniformity. A change in the phraseology of a statute, especially when made through a general revision, may result from the act being the production of many minds, and from being compiled from many sources, or the change may be made solely out of abundant caution, arising, sometimes, from a failure to correctly understand the present law, or it may grow out of a complete misconception of it. Certainly, where the change has been made as this was, it cannot be regarded as so clearly indicative of a special purpose and intent on the part of the lawmakers as when it is the result of a direct amendment. It is quite obvious that in this instance the action of the commissioners, and the legislators who adopted their work, was taken without any special design or purpose, or that it was based, not on what the then existing statutory oath demanded of the party

who took it in the faithful and conscientious discharge of his duty, but rather upon what was supposed to be demanded, and upon the erroneous belief that there was some omission or defect in the oath, which required legislation, when in fact there was none. There was no intrinsic difference between the statute of 1858 and that found in the Revision of 1866, and in the case at bar the latter was, in substance, complied with.

2. The respondent insists that the affidavit of publication and that of posting the notice of sale are fatally defective, but there is nothing in the objections made to either. The order of license to sell, following the statute, required the notice to be published " for three weeks successively next before the sale." The proof, by affidavit, was that the notice was published " once in each week for three successive weeks; that the first publication was made July 12, 1884, and the last publication July 26, 1884." This states that it was published for three successive weeks, and the date of the last publication shows that these three must have been the three weeks " next before the sale."

· The affidavit of posting is that the affiant, administrator, " posted three copies of the notice in three of the most public places in the village of Duluth, within which village the land above described is, in St. Louis county and state of Minnesota; that the three most public places were as follows, to wit, one copy posted in a conspicuous place in the United States post office, one in a conspicuous place in the office of the village justice of said village, and one in a conspicuous place on a lamp post at the intersection of Superior street (the main street in said village) and First avenue east." The objection made to this affidavit is that the places of posting the notices are stated to be in three of the most public places in the village of Duluth, not in three of the most public places in the county, as required by statute. Three of the most public places in Duluth—the county seat—might be, and in view of the then comparative population of Duluth and the remainder of the county of St. Louis (the state or federal census being matters of which the courts will take judicial notice) doubtless were, also, three of the most public places in the county. The affidavit pointed out to the probate court exactly where

the notices were posted, and that court, whose duty it was, when called on to confirm the sale, to pass upon the sufficiency of the notice given, as well as the regularity of the sale itself, was satisfied that the places named were three of the most public places in the county, and so found and recited in its order of confirmation. On the mere question of the publicity of these places, the determination of the probate court must be conclusive, at least in a collateral proceeding. It would never do to make the validity of such sales depend upon the conclusions which might be arrived at in a collateral proceeding upon the comparative publicity of the places, where the notices were actually posted. See *Dexter* v. *Cranston*, 41 Mich. 448, (2 N. W. Rep. 674;) *Schaale* v. *Wasey*, 70 Mich. 414, (38 N. W. Rep. 317;) *Richardson* v. *Butler*, 82 Cal. 174, (23 Pac. Rep. 9.)

Judgment reversed, and case remanded, with an order that judgment be entered as demanded in the answer.

(Opinion published 52 N. W. Rep. 381.)