AVERILL v. JACKSON CITY BANK.

ADMINISTRATOR'S SALE—COLLATERAL ATTACK—IRREGULAR NOTICE
—EFFECT OF CONFIRMATION.

An administrator's sale, duly confirmed by the probate court, will not be set aside in a collateral proceeding because the notices of sale, instead of being posted in three public places in the ward in which the property was situated, as provided by 2 How. Stat. § 6040, were posted in three public places just outside of the ward. MONTGOMERY, J., dissenting.

Error to Jackson; Lane, J., presiding. Submitted February 10, 1897. Decided July 16, 1897.

Ejectment by Nathan K. Averill against the Jackson City Bank. From a judgment for defendant, plaintiff brings error. Affirmed.

*Melville McGee*, for appellant.

*Wilson & Cobb*, for appellee.

GRANT, J.   The sole objection made to the sale in this case is that the notice was not posted in three public places in the ward where the property was located.   The defendant is a good-faith purchaser, and has spent a large sum of money in improving the property.   The notice was posted in three of the most public places in the city, —one being at the courthouse in the Fourth ward, and just across the street from the First ward, in which the property was located; one at the post-office, also in the Fourth ward, being less than one block from the First ward; and the other at the Hibbard House, in the Fifth ward, and directly across the street from the First ward. The notice was also published in a newspaper in strict compliance with the law.   The sale in every other respect was valid.   Plaintiff's guardian was served with notice of the proceedings.   The sale was open and notorious. Many bidders were present, and plaintiff's guardian appeared to protect his interests.   The property was sold at its full value.   Plaintiff received the benefit thereof, and now seeks to avoid the sale on account of a defect which in no wise prejudiced him or the estate.   The claim is unconscionable, and defendant's title should not be set aside unless the strict rules of law demand it.   2 How. Stat. § 6074, provides that—

"No action for the recovery of any estate sold by an executor or administrator under the provisions of this chapter shall be maintained by any heir or other person claiming under the deceased testator or intestate, unless it be commenced within five years next after the sale."

This and other statutes show it to be the policy of the law to protect these sales from attack when they have been fair.   It is a wise policy; otherwise estates would be sacrificed, for parties would not buy at full value if it were known that years afterwards their title was likely to be attacked, and held void.

Plaintiff seeks to have this sale declared absolutely void because it appears that the administrator did not give "notice of the time and place of sale as in this chapter

prescribed." Technically, this notice was not posted in the places required by law, but was posted in places more likely to secure a good sale. In *Schaale* v. *Wasey*, 70 Mich. 414, the notice was not published in the newspaper which the law required, but the court refused to hold the sale void for this reason. That case settled the law of this State that, when these sales are confirmed by the court, they will not be set aside for defective notice in a collateral proceeding. In order to hold this sale void, we must overrule that decision.

In *Osman* v. *Traphagen*, 23 Mich. 88, the court, speaking of an administrator's sale, say:

"It was a judicial sale, and was confirmed. In order to confirm it, the judge of probate was required to find that it was legally and fairly made. The court had jurisdiction to inquire whether the sale made by the administrator alone was legal. It was the duty of the court to make that inquiry."

In *Perkins* v. *Fairfield*, 11 Mass. 227, the sale was granted upon an erroneous and unfounded certificate of the judge of probate, and no bond was given as the statute required. The sale was sustained, the court holding that the purchaser had a right to rely upon the order of the court as an authority emanating from a competent jurisdiction, and that it was too late to say that the neglect to file a bond was fatal to the title.

In *Heirs of Ludlow* v. *Johnson*, 3 Ohio, 561, it appears that the land was sold by the administrator contrary to law, because the real estate could not be sold until it was ascertained that there would be a failure of personal assets. In a collateral attack the court refused to allow this to be interposed as a defense. In the opinion the court say:

"When a sale has been made, and its validity is questioned, this court will go no further back than to inquire whether it was ordered by competent authority. So far as the interests of the purchaser are concerned, we consider such orders equally available as judgments. The former can be no more impeached collaterally, because

there was an abundance of personal estate to have satisfied all debts, than the latter can by showing that the evidence under which they were recovered was insufficient."

See, also, *Stall* v. *Macalester*, 9 Ohio, 19.

In *Florentine* v. *Barton*, 2 Wall. 216, the court say: "The purchaser under such a sale is not bound to look further back than the order of the court, or to inquire as to its mistakes."

In *Satcher* v. *Satcher*, 41 Ala. 26, the statute provided that "no order for the sale of any land belonging to any estate shall be made when there are minors or persons of unsound mind interested in such estate, unless the probate court shall have taken proof by deposition, as in chancery cases, showing the necessity of such sale," etc. It was claimed that every sale made without compliance with that statute was wholly void. The court held otherwise. See, also, *Eliason* v. *Bronnenberg*, 147 Ind. 248.

In *Palmer* v. *Oakley*, 2 Doug. (Mich.) 433, 496 (47 Am. Dec. 41), it was objected that the notice of the guardian was insufficient, as it was given before the bond was executed. The court in that case said:

"All that a purchaser at a judicial sale is bound to look to with a view to his protection is to see that the court by whom the sale was authorized was empowered to make the decree. If the court had the power, the failure of the guardian, as in this case, to fulfill certain directions which the law imposed on her, should not and cannot prejudice the rights acquired by such purchaser."

At that time the present statute was in existence. Rev. Stat. 1846, p. 314.

If, in our judgment, the former decisions of this court upon this subject were wrong, I do not think it wise for us to overrule them, especially in a case where the effect would be to defeat, rather than to secure, justice. The effect of this decision would be to unsettle many titles based upon sales made under the orders and judgments of the probate court. The language of this court in *Palmer* v. *Oakley*, *supra*, is applicable here:

"If such a rule were to obtain, but few purchasers would be found at judicial sales; for but few would incur the hazard of purchasing and paying their money, when the purchase so made may, at the distance of 10 or 15 years, be held void, in consequence of a noncompliance by a guardian with the requisitions of the statute. Such a rule would also operate injuriously on the ward, as upon every sale made the purchaser would take into the account the hazard he incurs. The best interests of infants require that no unnecessary obstacles should be thrown in the way of obtaining the best possible price for their estates when sold."

So, also, is the language in *Osman* v. *Traphagen, supra:*

"If in these judicial sales the validity of the title, even in the hands of *bona fide* purchasers, should be made to depend on facts like these, and when, too, the facts are called out in collateral proceedings, it would lead to the most alarming consequences. The announcement of such a rule would fill the State with dismay. Titles now considered good everywhere would be subjected to scrutiny and doubt and depreciation, and sales required to be made hereafter by representatives and public officers under judicial process and orders would be shunned as pitfalls and snares."

I think the judgment should be affirmed.

LONG, C. J., HOOKER and MOORE, JJ., concurred with GRANT, J.

MONTGOMERY, J. (*dissenting*). This is an action of ejectment to recover the undivided one-third part of a portion of lot 7, block 1 N., range 1 E., in the city of Jackson. Both parties claim title through the former owner, Benjamin G. Mosher, who died intestate June 27, 1874, leaving a widow and three heirs, Amanda M. Bronson, Alice J. Byrne, and the plaintiff, a grandson. An administrator was appointed on the 29th of July, 1874. On the 29th of September, 1877, license was granted to borrow money, and $5,000 was borrowed on the security of a mortgage upon the property in question, due in five years. On June 23, 1883, the administrator filed a peti-

tion in probate court, praying leave to sell the real estate belonging to the estate, for the purpose of paying the debts. This petition sets forth that the debts of the estate are the mortgage in question of $5,000; another mortgage of $1,000 on the same property; a claim of Timothy Hoyle of $3,000, and interest for about four years, for a deficiency on a decree on foreclosure of a mortgage given by deceased in his lifetime; a mortgage on another piece of property belonging to the estate; a judgment against the administrator in his representative capacity, in favor of Perry Averill, of $500 and interest; and a claim allowed by commissioners in favor of Perry Averill of $77.80, from which an appeal was allowed to the circuit court to claimant, he claiming to be entitled to $250.54. On the filing of this petition the probate court made an order of hearing, appointing the 16th day of July then next as the time for hearing on said petition, and directing that notice of the pending hearing should be given by serving a copy personally upon all the heirs at law or other persons interested in the estate to be found in the county. Service was made upon all concerned except the plaintiff, who was served by delivering a copy to Perry Averill, his guardian and father. On July 17, 1883, an adjourned day for hearing, a license, pursuant to the prayer of the petition, was granted. The license recites that due notice of the hearing of said petition has been given to all persons interested, as directed by the court. The license directed the administrator to give notice of the time and place of holding the sale by posting the notice in three of the most public places in the city of Jackson, and publishing the same in a newspaper in Jackson county for six weeks successively next before the sale. A bond was required and furnished, and the oath before sale was duly taken. The notice was posted in three of the most public places in the city of Jackson, but none of them were posted in the First ward of the city, in which the property in question was located. The sale was made as advertised, and the property struck off to the defendant for $18,000, which

the court finds was a fair price for the property. On the 7th of September a report of sale was filed, and the court made an order confirming the sale. A deed of the premises was ordered by the court, and executed and delivered. The purchase by the bank was made in good faith, without notice of any defect or irregularity in the proceedings. Immediately following such sale, the bank took possession of the property, and has since spent upwards of $15,000 in improvements thereon.

The contentions made in the court below and in this court were that, by delay in settling the estate, the probate court lost jurisdiction to make the order of sale; that there was not such a showing of indebtedness as to authorize the sale; that the service of process upon the guardian was not sufficient to confer upon the court jurisdiction; that the notices of sale were not posted as required by the statute. The court ruled against the first and second contentions of the plaintiff; held, as to the third, that, the court having jurisdiction of the estate, a purchaser is protected, whether the jurisdiction was properly or improperly exercised, or whether the license was granted upon a sufficient or insufficient petition. As to the fourth contention, namely, the failure to post notices of sale, the court held that this was foreclosed by the order of confirmation.

In support of the contention that the court had, by lapse of time, lost jurisdiction of the estate, and had not power to order a sale, counsel relies upon *Hoffman* v. *Beard*, 32 Mich. 218. This case has been, in effect, overruled, as was said by this court in *Re Beniteau*, 88 Mich. 152. See, also, *Peckham* v. *Hoag*, 92 Mich. 423.

This case must turn upon the construction to be given to section 6076, 2 How. Stat., which provides that the sale shall not be void on account of any irregularity in the proceedings, provided it shall appear that the sale was licensed by the probate court having jurisdiction; that a bond, which was approved by the judge of probate, was given, in case a bond was required; that the officer took

the oath prescribed in the chapter; that he gave notice of the time and place of sale as in the chapter prescribed; and that the premises were sold accordingly, and the sale confirmed by the court, and that they are held by one who purchased them in good faith.    These various clauses have been before the court for construction on different occasions.    As to the first clause, it has been held that it is sufficiently complied with if the sale is ordered by the probate court having jurisdiction of the estate.    *Howard* v. *Moore*, 2 Mich. 226; *Woods* v. *Monroe*, 17 Mich. 238; *Dexter* v. *Cranston*, 41 Mich. 448; *Blanchard* v. *De Graff*, 60 Mich. 107.    See, also, Gary, Prob. Law, § 539; *Reynolds* v. *Schmidt*, 20 Wis. 394.    The second provision, requiring a bond in case a bond is required, has been construed to mean in case a bond is required by the probate court.    *Norman* v. *Olney*, 64 Mich. 553.

The question which presents the greatest difficulty arises out of the failure to give the notice required by the statute.    Section 6040, 2 How. Stat., provides that, when a sale is ordered, notice of the time and place of holding the same shall be posted up in three of the most public places in the township or ward in which the land is situated, and shall be published in a newspaper, etc.    This was not complied with, and, unless the order confirming the sale shall be held to have cured the error, it follows that the defendant acquired no title.    It is undoubtedly true, in a sense, that the probate court is a court of general jurisdiction; but the proceeding for the sale of lands by an executor or administrator is statutory, and it cannot be doubted that it would be competent for the legislature to fix the limit of the presumptions that are to arise from an adjudication of the court, or to limit the conclusiveness of the holding of the court upon any question.    12 Am. & Eng. Enc. Law, 268, 269.    Public policy requires, undoubtedly, that sales by administrators shall be upheld where good faith is shown, and that irregularities which have not affected the interests of the parties concerned disastrously shall not operate to defeat title.    But when the statute

was enacted this was a legislative question, and, if the fair construction of the provisions of this statute leads to the conclusion that the defect in question is not obviated by the curative provisions, much as we may regret the necessity of so holding, we are bound to follow the statute.

It is to be noted that the curative section was deemed by the legislature necessary, and this is declarative of the understanding as to the nature of the proceedings, and as to the force which the legislature intended should be given to the adjudication and determination of the court. It is also to be noticed that in this curative section it is provided that there must be a concurrence of all the conditions named before the attack upon the sale for irregularity in the proceedings is precluded. This includes not only notice of the time and place of sale as in this chapter prescribed, but also the confirmation of the court. It seems illogical to hold that the confirmation of the court may cure the error of a failure to give the notice of the time and place as prescribed, when the requirement of such a notice is coupled with the confirmation in the curative provisions. In *Cahill* v. *Bassett*, 66 Mich. 407, the question whether the confirmation of sale would cure such a defect was raised, but not decided. The opinion of Mr. Justice CHAMPLIN implies that the confirmation would not cure such a defect, and this was concurred in by Mr. Justice MORSE. But in the later case of *Schaale* v. *Wasey*, 70 Mich. 420, in an opinion by Mr. Justice MORSE, concurred in by his associates, it appeared that the notice was published in a newspaper mainly published in the German language. The court said:

"We do not think such a publication as the one in this case a proper one under our laws; but we are not prepared to say that it vitiates a good-faith sale, legally made in all other respects, especially when such sale is attacked collaterally, and there is no evidence showing a want of bidders at such sale, or any inadequacy of price in the sale."

It is difficult to understand how this holding could have been made unless upon the ground that the confirmation

of the sale cures the defect.    This view finds support in *Osman* v. *Traphagen*, 23 Mich. 80; Van Fleet, Coll. Attack, § 787, and cases cited.    Nevertheless, I think the court lost sight of the real purpose and intent of the legislature in the enactment of the curative provisions of the statute, and that the holding should be overruled. I think the sale in the present case cannot be sustained. How far the defendant might be made whole by subrogation or other equitable remedy cannot, of course, be determined on this record.

Judgment should be reversed, judgment for plaintiff entered here on the findings, and the case remanded for further proceedings under the statute.