### W. W. HINES v. S. H. LUMPKIN.

Decided November 19, 1898.

1. **Acknowledgment of Deed—Grantor's Identity.**

A deed in a chain of title is defective where the certificate of its acknowledgment fails to show that the grantors acknowledging it were known to the notary.

2. **Action for Slander of Title—Proof of Title by Limitation.**

In an action for slander of title, the plaintiff may prove a title by limitations, though it be not specially pleaded. Article 3347, Revised Statutes, construed.

3. **Same—Title Is Slandered, When.**

An attorney employed to examine the title to realty by its owner and a prospective purchaser is guilty of slandering the title where he pronounces it bad, when he knows it to be good, or by ordinary skill and diligence could have ascertained that fact.

4. **Same—Slander Not Shown, When.**

If the contract with the attorney is, that he is to pass upon the title only as it is shown in the abstract of title furnished him, and he does this truly, or with ordinary skill, care, and prudence in such a matter, he is not liable for slander of title if the abstract is faulty, even though the deed records show a perfect title.

APPEAL from Bosque. Tried below before Hon. J. M. HALL.

*Lockett & Kimball* and *Wm. M Knight,* for appellant.

*Lumpkin & Alexander;* for appellee.

HUNTER, ASSOCIATE JUSTICE.—This suit was brought by W. W. Hines in the District Court of Bosque County on July 28, 1894, against S. H. Lumpkin, to recover special damages occasioned by certain slan-

derous words alleged to have been uttered by Lumpkin of and concerning the title of plaintiff to ninety-four acres of land lying in Bosque County, and which he had sold to one Byrum at $12.50 per acre, on condition that the title was good, it being agreed between them that said Lumpkin should pass upon the title and that they should be bound by his decision. The contract of sale containing this condition was in writing and signed by both parties.

The averment is as follows: "Did falsely, maliciously, and without probable cause for believing them to be true, use and speak in substance the following defamatory words concerning the plaintiff's title to the said ninety-four acres of land aforesaid, to wit: 'The title [meaning thereby plaintiff's title to the ninety-four acres aforesaid] 'is not worth a durn' [meaning thereby that plaintiff's title was invalid and worthless], 'and my advice to Byrum is to have nothing to do with it; if he does he will get into trouble.'"

It is alleged that Byrum refused to purchase the land by reason of these words so spoken to him, and that the plaintiff was damaged thereby in the sum of $1000 actual and $2000 vindictive damages.

The defendant pleaded the general denial, and specially, that he was an attorney at law and that M. J. Byrum brought him the abstract of title to the land in question and employed him to examine the title as shown and set forth in the abstract, and not otherwise, and this he did in good faith and truly, advising said Byrum in substance that said abstract did not show a good and sufficient title in said Hines, on account of the unsatisfied incumbrances thereon as shown by said abstract, and for other defects; that this opinion was given in good faith to his said client, and without malice, and he is therefore not liable to the plaintiff, as his communication was privileged; that the abstract showed incumbrances on the land in one instance of $12,500 not properly released, and in another $1167.50 which was not yet due and was unreleased, and that, as shown by said abstract, said title was not good and his statements concerning the same were true; that, in any event, he acted in good faith and without malice, and that he is responsible only to his client, the said Byrum, for any erroneous advice given, and not to the plaintiff, to whom he owed no duty whatever.

The evidence tends to show that the parties to the contract had agreed upon defendant Lumpkin, who was a lawyer and considered as especially skilled in the laws pertaining to land titles, but when they went to his office Byrum employed him and paid him his fee in advance to examine the title as shown in a certain abstract of title which was furnished Lumpkin, it being understood that he should not be required to leave his office, but should pass upon the title as presented in that abstract.

The abstract is not contained in the record, but it seems that it showed a deed of trust against this ninety-four acres and other lands, executed by W. S. Martin and wife, conveying the land to R. L. Brown to secure a note of $12,500 made by said Martin in favor of J. Gordon Brown, dated

June 30, 1890, and due November 1, 1895, which was duly recorded in Bosque County. As we understand the record, the abstract also showed that R. L. Brown on February 18, 1892, received from Martin and wife an absolute deed to the lands, and on that day executed a release of the deed of trust, but it did not appear in the abstract that J. Gordon Brown, the owner of the note and beneficiary in the mortgage, had joined in said release or consented thereto, although the deed to R. L. Brown, as recorded in the deed records, showed that the conveyance was made in discharge of the said $12,500 note, which was then and there canceled and delivered to Martin. The abstract also showed that there was about $1167.50 in vendor's lien notes which had been executed by Hines to Brown, outstanding and unreleased, due in 1895, 1897, 1900, and 1903, respectively, but Fitzhugh, the agent of Brown, and who seems to have been interested in the lands also, it is contended, told the defendant Lumpkin, before he examined the abstract, that these vendor's lien notes would be released if the trade was completed by the parties, it appearing that he was to get the proceeds of the sale in discharge of these same notes.

There was evidence tending to prove that Lumpkin was familiar with the title to the land, and had previously declared the title good, and also some evidence tending to prove ill feelings on his part towards Fitzhugh and the Browns, under one of whom Hines held his title, though it seems friendly relations existed between him and Hines.

On the trial the court properly excluded a deed in plaintiff's chain of title—the deed from Joseph Monks and wife to George W. and William F. Norton—because the certificate of acknowledgment failed to show that the persons who appeared before the notary and acknowledged the deed were known to him to be the persons who signed the instrument; and thereupon the plaintiff offered evidence to prove title to the land under the five years' statute of limitation, which was excluded by the court upon the ground that he had not set up a title by limitation in his petition. In excluding this evidence of limitation, we think the court erred.

Article 3371, Sayles' Civil Statutes, provides: "The laws of limitation of this State shall not be made available to any person in any suit in any of the courts of this State unless it be specially set forth as a defense in his answer." Article 3347 provides: "Whenever in any case the action of a person for the recovery of real estate is barred by any of the provisions of this chapter, the party having such peaceable and adverse possession shall be held to have full title, precluding all claims." The five years' article is embraced in this chapter.

The article first quoted has reference only to the manner in which the statute may be used as a defense. But the last article vests the title of the true owner in the party who has had peaceable and adverse possession for the period of time prescribed by the statute, and this title may be used in offensive proceedings as well as defensive, and when made the basis of an action to recover damages from a wrongdoer, it is not neces-

sary to plead it specially, but it is sufficient to aver title in general terms, the same as in any other case. It is, when the bar is once completed, as good a title in the one in whose favor the statute had run as the true owners held before they were barred; and it is no more necessary for a plaintiff to plead it specially in actions for damages to the land or slander to the title than it is in cases where he holds under a chain of deeds running back to the sovereignty of the soil. Railway v. Wickham, 44 S. W. Rep., 1023; Sayles' Civ. Stats., arts. 3371, 3347.

We are therefore of opinion that the plaintiff should have been permitted to prove his title by limitation, although not specially pleaded.

The court below charged the jury to find a verdict for the defendant, doubtless because, under the rulings of the court, the plaintiff had failed to prove a title to the land. If title to the land is proven on another trial, and the evidence is the same as now appears in the record, we think it would probably be error to give a peremptory instruction to find for defendant, for we are inclined to think that there is sufficient evidence on all the material allegations in plaintiff's petition to entitle him to have them submitted to the jury under proper legal charges.

We also think that the evidence was sufficient to require the issues presented by the defendant's answer to be submitted to the jury, and in view of our conclusions, resulting in another trial, we think it would be improper in us to discuss the evidence. We think it proper to state, however, that we can see no reason why a lawyer, though employed to examine a title and agreed upon by both parties, may not be guilty of slandering the title the same as anybody else, if he falsely and maliciously declares it bad when he knows it to be good, or could have ascertained the fact by the use of ordinary skill and diligence.

Of course, if his contract was to pass upon the title only as it was shown in the abstract furnished him, and he did this truly, or with such skill and care as ordinarily skillful and prudent attorneys would use in such a case, then he would not be liable if the abstract was at fault, though the deed records might show a perfect title. Ordinarily a title by limitation is not shown in an abstract, and an attorney, under a contract to pass upon the title as shown by such abstract, would not be required to consider such a title, or even justified in doing so, unless the evidence thereof should be very full and accurate on all the legal points that could be raised on such a title.

For the reasons before stated, we think the judgment herein ought to be reversed and the cause remanded; and we so order.

*Reversed and remanded.*