## NELSON v. LORD et al.

(Fourth Division. Fairbanks. August 23, 1910.)

### No. 1159.

1. ACKNOWLEDGMENT (§ 36*)—RECORDS—CONTRACTS.

The contract sued on was signed by both parties, but was not acknowledged by either. It was signed by one witness, and in the absence of acknowledgment, it was attempted to secure its certification by the witness to entitle it to be recorded. The only certificate indorsed on the contract is that of the notary, which is merely to the effect that the witness subscribed and swore to the affidavit indorsed on the contract before the notary. There is no certificate by the notary that he was acquainted with the subscribing witness or that he had any evidence that such person was the subscribing witness. *Held*, the statute requires the officer who takes proof of an instrument to certify that he is personally acquainted with such subscribing witness, or has satisfactory evidence that he is the same person who was the subscribing witness to such instrument. Manifestly the proof is not such as is required by the statute in order to entitle the instrument to record.

[Ed. Note.—For other cases, see Acknowledgment, Cent. Dig. §§ 181, 182, 184–198, 221–223; Dec. Dig. § 36.*]

2. EQUITY (§ 72*)—LACHES.

Where the plaintiff stood by and saw the defendant expend money and labor on an undeveloped and wild-cat mining claim and discover a valuable pay streak thereon, and pay the owner thereof and take his deed to the claim, and then brought his suit to fasten a trust thereon, claiming under a contract of which the purchaser had no notice, *held*, the plaintiff was guilty of such laches that he could not recover against the defendant, who had paid his money in good faith.

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 207, 210–220, 225, 226; Dec. Dig. § 72.*]

3. EQUITY (§ 72*)—LACHES.

No fixed rule can be laid down with reference to the time within which a person must assert his claim in equity or be barred by laches. Every case must be controlled by its own circumstances; and therefore the fact that the property is one of fluctuating and uncertain value is a strong circumstance to be taken into consideration in determining whether or not the plaintiff was guilty of laches.

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 207, 210–220, 225, 226; Dec. Dig. § 72.*]

*See same topic & § NUMBER in Dec. & Am. Digs. Key No. Series & Rep'r Indexes

This is an action to declare a trust in real estate and for an accounting. Plaintiff alleges, among other things, that on the 12th day of January, 1905, the defendant Lord and himself entered into a contract, whereby the defendant, in consideration of the delivery on the part of the plaintiff to said Lord of a prospecting boiler and pipes and hose necessary to the working and operation thereof, agreed to make, execute, and deliver a deed conveying to the plaintiff of an undivided one-fifth interest in and to any one of the three following placer mining claims, situate on Cleary creek, in the Fairbanks recording district, district of Alaska, to wit: Creek placer mining claim No. 18 below discovery; bench placer claim No. 18, first tier, right limit, below discovery; bench placer claim No. 18, second tier, right limit, below discovery. Plaintiff further alleges that he delivered said boiler to the defendant Lord, and thereafter, and before the commencement of this action, he elected to take under said contract, in consideration of said boiler, an undivided one-fifth interest in said bench placer mining claim No. 18, first tier, right limit, below discovery, upon said Cleary creek. Plaintiff further alleges that the said defendant Lord thereafter, and on the 2d day of June, 1908, disregarding his said agreement with plaintiff, wrongfully, fraudulently, and unlawfully, and with the intent and purpose of robbing and cheating the plaintiff out of his interest in and to said bench placer claim, deeded and conveyed to the defendant Sylvester Howell all of the defendant Lord's right, title, and interest, including the interest of plaintiff, in and to the said placer mining claim No. 18, first tier of benches, right limit, below discovery, on Cleary creek. Plaintiff further alleges that the said Howell purchased the said claim with notice of his right thereto under said contract between plaintiff and defendant Lord. Plaintiff further alleges that the value of said interest in said mining claim is $20,000; and that the plaintiff has suffered damage in the sum of $20,000 on account of the defendant Lord's breach of said contract.

Defendant Lord, in his answer to plaintiff's complaint, admits the execution of the contract relied upon by plaintiff, but avers that plaintiff failed to comply with the terms of said

contract in that the said boiler furnished by the plaintiff to defendant Lord was worthless and not in accordance with the representations made by the plaintiff concerning its fitness for the purposes to which it was to be appropriated by the defendant Lord.

Defendant Howell, in his answer to plaintiff's complaint, denies that, at the time he acquired Lord's interest in the placer mining claim in issue, he had any knowledge of the contract between defendant Lord and the plaintiff, and avers that he was an innocent purchaser, for good and valuable consideration, and further alleges that the plaintiff should not recover anything in this action on account of the failure of the plaintiff to notify the defendant Howell of the existence of said contract prior to defendant Howell's purchase, or prior to his expenditure of large sums in the development of said mining claim. He further alleges that plaintiff is estopped from asserting any right, title, or interest in and to said mining claim for the reason that he stood by and permitted the defendant Howell to purchase the property and to make large expenditures thereon without asserting any right or interest in or to the property until after the defendant Howell had procured his deed therefor and demonstrated by such expenditures that the property had some value. Plaintiff, by reply, denies the affirmative matter alleged in the answers of the two defendants.

The foregoing statement sufficiently defines the contentions of the respective parties, so far as the same is necessary to the determination of the rights of the parties herein.

John F. Dillon, of Fairbanks, for plaintiff.

James Wickersham, of Fairbanks, for defendants.

LYONS, District Judge. In arriving at a conclusion as to the rights of the parties under the pleadings and evidence herein, the questions involved may be reasonably discussed under four distinct heads: First, did the plaintiff furnish and deliver to the defendant Lord such a prospecting boiler as is contemplated by the contract; second, is the contract between the plaintiff and the defendant Lord executed with such for-

malities as to entitle it to record, and, when recorded, did it impart constructive notice to the world of its existence; third, did the defendant Howell have actual knowledge of the existence of the contract between the plaintiff and the defendant Lord at the time he secured an option to purchase said property, or at any time prior to his actual purchase thereof; fourth, is the plaintiff guilty of laches, and therefore not entitled to recover against the defendant Howell, even though the latter had actual notice of the existence of the contract between the plaintiff and the defendant Lord?

Referring now to the first head; that is, did the plaintiff comply with his contract and deliver to defendant Lord such a prospecting boiler as was contemplated by the parties at the time of the execution of the contract? It is admitted that the plaintiff actually delivered a prospecting boiler to the defendant Lord, but the evidence uncontradicted shows that Lord never used the boiler, and he assigns, as his reason for not using the same, that it was worthless. He further testifies that he notified the plaintiff that the same was worthless and offered to return it to plaintiff. However that may be, it is obvious, from the testimony of both the plaintiff and the defendant Lord, that the plaintiff made no representations at the time of the execution of the contract that the boiler would be satisfactory for Lord's purposes, and the evidence further shows that Lord knew as much about the boiler as the plaintiff. Considerable expert evidence was offered tending to prove and disprove the claim made by the plaintiff that the boiler was a proper boiler to prospect the ground in controversy; but since it is evident that the defendant Lord knew what he was purchasing, and that the plaintiff made no representations regarding the boiler or its fitness to do the work desired by the defendant Lord, it cannot be successfully claimed that the contract was without consideration, or that the plaintiff in any way fraudulently imposed upon the defendant Lord at the time of the execution of the contract. The question, therefore, as to whether or not the plaintiff complied with his covenants in the contract between himself and the defendant Lord must be answered in the affirmative.

4 A.R.—12

The second is a more serious question, however: Was the contract executed with such formalities as to entitle it to record, and, when recorded, was that constructive notice to the world of its existence, and therefore was the defendant Howell legally notified by the recordation of the instrument of the alleged interest of plaintiff in said placer mining claim? The contract is signed by the plaintiff and the defendant Lord is not acknowledged by either of the parties, and is attested by one witness, whose affidavit as to the execution of the contract by the parties is indorsed upon the contract. The sections of our statute which bear on the question as to whether such an instrument is entitled to record, and, if entitled to record, what formalities are necessary in order that the recording of the same may be constructive notice of its contents, are as follows:

Section 106, p. 374, Carter's Annotated Alaska Codes, says:

"Every letter. of attorney or other instrument containing a power to convey lands as agent or attorney for the owner of such lands, and every executory contract for the sale or purchase of lands when acknowledged or proved in the manner prescribed in this title for the acknowledgment or proof of conveyances, may be recorded in the commissioner's office of any precinct in which the lands to which such power or contract relates may be situated; and when so acknowledged or proved the record thereof when recorded, or the transcript of such record, duly certified, may be read in evidence in any court in the district without further proof of the same."

Section 89, p. 372, Id.:

"Proof of the execution of any conveyance may be made before any officer authorized to take acknowledgments of deeds, and shall be made by a subscribing witness thereto, who shall state his own place of residence, and that he knew the person described in and who executed such conveyance; and such proof shall not be taken unless the officer is personally acquainted with such subscribing witness or has satisfactory evidence that he is the same person who was a subscribing witness to such instrument."

Section 93, p. 372, Id.:

"Every officer who shall take the proof of any conveyance shall indorse his certificate thereon, signed by himself on the conveyance, and in such certificate shall set forth the things hereinbefore required to be done, known, or proved, together with the names of the witnesses examined before such officer, and their places of residence, and the substance of the evidence by them given."

Section 94, p. 372, Id.:

"Every conveyance acknowledged or proved or certified in the manner hereinbefore prescribed by any of the officers before named may be read in evidence without proof thereof, and shall be entitled to be recorded in the precinct in which the lands lie."

The contract sued upon in this action is therefore entitled to record under section 106, supra, providing the same is executed with the formalities required by law. The contract is not acknowledged. Therefore, unless it is proved according to the requirements of section 89, supra, or certified according to section 93, supra, it is not entitled to record. The only certificate indorsed on the contract is that of the notary, which is merely to the effect that the witness subscribed and swore to the affidavit indorsed on the contract before the notary. There is no certificate by the notary that he was acquainted with the subscribing witness or that he had any evidence that such person was the subscribing witness.

Section 89, supra, provides, among other things, that:

"Such proof shall not be taken unless the officer is personally acquainted with such subscribing witness or has satisfactory evidence that he is the same person who was a subscribing witness to such instrument."

And section 93, supra, provides, among other things, that the "certificate" of the officer "shall set forth the things * * * required to be done, known, or proved."

The statute therefore requires the officer who takes proof of an instrument to certify that he is personally acquainted with such subscribing witness, or has satisfactory evidence that he is the same person who was the subscribing witness to such instrument. Manifestly the proof is not such as is required by the statute in order to entitle the instrument to record. In re McIntyre v. Kamm, 12 Or. 253, 7 Pac. 27, it is held that an instrument is not proved, so as to entitle it to record, unless the certificate of the officer before whom the proof was made recites the fact that the witness was duly sworn. And the court says, among other things:

"The power of the officer in taking the proof may be likened to that of an inferior court 'which ought not to show things only by implication, but ought to show them expressly.'"

"Usually the statutes require the officer to certify that the person making the acknowledgment was to him personally known, or proved on satisfactory evidence, to be the individual who executed the instrument. Under such a statute, a certificate which fails to show in some way that the acknowledgor was known to the officer is fatally defective. But where the statute in force at the time the acknowledgment was taken did not prescribe such recital, its omission, of course, can have no effect upon the validity of the certificate." 1 Cyc. 588.

Our statute contains the same provision with reference to the officer taking the proof of a deed as the officer taking the acknowledgment of one who executes a deed; that is, in the one instance the witness proving the deed must be personally known to the officer before whom such proof is made, and the officer taking the acknowledgment of the one who executes a deed or contract for record must also be personally acquainted with the asknowledgor. Some courts hold that, unless the statute requires the certificate to recite the fact that the officer is acquainted with the witness or acknowledgor, the court will presume that the officer was personally acquainted with the witness or acknowledgor, because it will be presumed that the officer did his duty and would not have taken the acknowledgment unless he was qualified to do so under the law; but, where the statute requires the certificate to contain a recital of the acquaintance, the courts are unanimous in holding that, under such circumstances, the certificate must contain such a recital, or it is insufficient and will not authorize the recordation of the instrument. Our statute (section 93, supra) requires that "the certificate shall set forth the things required to be done, known or proved." Since the statute requires the notary to know and be acquainted with the witness, it follows that such statute, in terms, requires the certificate to contain a recital of that knowledge. Cannon v. Deming, 3 S. D. 421, 53 N. W. 863; Gage v. Wheeler, 129 Ill. 197, 21 N. E. 1075; Tully v. Davis, 30 Ill. 103, 83 Am. Dec. 179; Black v. Aman, 6 Mackey (D. C.) 131; Wolf v. Fogarty, 6 Cal. 224, 65 Am. Dec. 509; Fogarty v. Finlay, 10 Cal. 239, 70 Am. Dec. 714; Blain v. Rivard, 19 Ill. App 477; Hines v. Lumpkin, 19 Tex. Civ. App. 556, 47 S. W. 818; Smith v. Garden, 28 Wis. 685;

Alaska Exploration Co. v. Northern Mining & Trading Co., 152 Fed. 145, 81 C. C. A. 363. The contract sued upon, not having been executed with the formalities required by law, was therefore not entitled to record, and its recordation did not of itself convey constructive notice of its contents to the defendant Howell.

The plaintiff contends, however, that the defendant Howell had actual notice of the existence of the contract before he acquired any interest in the placer mining claim in controversy. The defendant Howell denies that he ever had any such notice prior to his purchase of the property. The plaintiff testified that he notified the defendant Howell of the existence of the contract and of his interest in the property two or three days before the receipt of the deed by Howell from defendant Lord. Howell denies that plaintiff or any one else ever conveyed such notice to him. But even under the plaintiff's testimony he was aware that Howell had an option to purchase the property; he also knew that Howell and his lessees were working on the property long prior to the time that he claims to have given Howell notice of his claim to an interest in the property; and the testimony of the other witnesses, coupled with the conduct of the plaintiff, justifies the conclusion that the preponderance of the evidence is to the effect that Howell had no notice of plaintiff's claim to the property in controversy until after he received his deed from Lord.

Was the plaintiff guilty of laches in not bringing this action at an earlier date? The evidence shows that the property had only a speculative value until the defendant Howell and his lessees acquired an option on the property in September, 1907. The evidence further shows that from that time until the receipt of the deed by Howell from Lord, to wit, on the 2d day of June, 1908, considerable work had been done on the ground both by Howell and his lessees; that the plaintiff was aware of such work being prosecuted; that he had seen Howell several times between September, 1907, and June, 1908, and, according to his own testimony, he did not notify Howell of his alleged claim to the property till two or three days before

the delivery of the deed by Lord to Howell. From January 12, 1905, until May, 1908, the plaintiff made no effort to compel Lord to comply with the contract and made no effort to have Lord restrained from disposing of the same to innocent purchasers. The evidence warrants the inference that the plaintiff was desirous of having the money of some one else expended in the exploration of the property for the purpose of determining its value, and, when it was shown to possess value, the plaintiff asserted his claim, and now invokes the aid of a court of equity to grant him relief by enforcing the specific performance of his contract with the defendant Lord. He who seeks equity must do equity, and the plaintiff should have long before this time sought an enforcement of his contract. He certainly should have done so before innocent purchasers, for value, expended money in exploring and developing the property. As was said by the Supreme Court of the United States in Re Twin-Lick Oil Co. v. Marbury, 91 U. S. 587, 23 L. Ed. 328:

"The fluctuating character and value of this class of property is remarkably illustrated in the history * * * of mineral oil from wells. Property worth thousands to-day is worth nothing to-morrow; and that which would to-day sell for a thousand dollars as its fair value may, by the natural changes of a week or the energy and courage of desperate enterprise, in the same time be made to yield that much every day. The injustice, therefore, is obvious of permitting one holding the right to assert an ownership in such property to voluntarily await the event, and then decide, when the danger which is over has been at the risk of another, to come in and share the profit. While a much longer time might be allowed to assert this right in regard to real estate whose value is fixed, on which no outlay is made for improvement, and but little change in value, the class of property here considered, subject to the most rapid, frequent, and violent fluctuations in value of anything known as property, requires prompt action in all who hold an option, whether they will share its risks, or stand clear of them."

See, also, Speidel v. Henrici, 120 U. S. 377, 7 Sup. Ct. 610, 30 L. Ed. 718; Hayward v. National Bank, 96 U. S. 611, 24 L. Ed. 855; Patterson v. Hewitt, 195 U. S. 309, on page 321, 25 Sup. Ct. 35, on page 38 (49 L. Ed. 214). In the last case cited, the court said:

"There is no class of property more subject to sudden and violent fluctuations of value than mining land. A location which to-day may have no salable value may in a month become worth its millions. Years may be spent in working such property apparently to no purpose, when suddenly a mass of rich ore may be discovered, from which an immense fortune is realized. Under such circumstances; persons having claims to such property are bound to the utmost diligence in enforcing them, and there is no class of cases in which the doctrine of laches has been more relentlessly enforced."

No fixed rule can be laid down with reference to the time within which a person must assert his claim in equity or be barred by laches. Every case must be controlled by its own circumstances, and therefore the fact that the property in controversy is one of fluctuating and uncertain value is a strong circumstance to be taken into consideration in determining whether or not the plaintiff was guilty of laches. The further fact that in this case, as the evidence shows, the defendant Howell was certainly ignorant of the claim of the plaintiff until long after he had received his option to purchase and long after he had begun his work of development on the claim is another strong circumstance to be taken into consideration in determining whether or not the plaintiff is guilty of laches. And the further fact that the plaintiff resided in such proximity to the claim as to preclude the possibility of his not being aware of such expenditures of money in the development of the claim by the defendant Howell is another circumstance bearing upon the question of laches. In short, all these facts, taken together, force the conclusion that the plaintiff purposely and knowingly withheld any information concerning his claim to the property in controversy from the defendant Howell to the end that the latter would by his own efforts either determine that the claim was a mine or that it was worthless. A court of equity should not lend its assistance towards the enforcement of a claim evidenced by such bad faith; but, on the contrary, should hold that the plaintiff is estopped by his own conduct from now claiming any interest in the mining claim in controversy.

Let findings of fact and conclusions of law be entered in accordance with this opinion.