**GLEASON et al. v. DIAMOND et al.**

No. A–1020.

District Court of Alaska. Third Division. Valdez.

Oct. 18, 1939.

Cecil H. Clegg, of Fairbanks, and L. D. Roach, of Anchorage, for plaintiffs.

Warren N. Cuddy and Roy Bunn, both of Anchorage, for defendants and intervenors.

HELLENTHAL, District Judge.

This action was brought to foreclose ten certain liens for wages claimed to be earned by the plaintiffs while working for Bruno Agostino, James Agostino, Joseph B. Diamond and Thomas C. Price, partners doing business under the firm name and style of New Black Diamond Coal Company, for labor performed in connection with the mining of coal and preparing said coal for market.

In the amended complaint, each plaintiff claims a lien on the leasehold interest of said defendants in and upon the: "NE 1/4 SE 1/4 and S 1/2 of SE 1/4 Section 14, South 1/2 Southwest 1/4, SW 1/4 SE 1/4, and SW 1/4 NW 1/4, SW 1/4 Section 13, East 1/2 of NE 1/4 Section 23, all of Section 24, NW 1/4 of Section 25 and N 1/2 of NE 1/4 Section 25, all in Township 19 North, Range 2 E, containing 1210 acres in the Anchorage Recording Precinct, Third Division, Territory of Alaska. Serial 08103.", together with that certain washing machine plant used in connection with the operation of the said coal mining company property hereinbefore described as a producing coal mine, including all appurtenances, all machinery, tools, equipment, appliances, pipes, piping and all other personal property whatsoever used in connection with said coal washing machine plant during the period of employment of said claimants as hereinbefore stated. Each claimant, claiming a certain amount due him or her for wages, for drawing and recording the lien and for attorneys' fees.

The various liens were attached to the complaint, some claiming a lien on the coal mining property and the machine used thereon; another lien is on the coal mining property, coal crusher and coal washer thereon; others are on the coal mining property and appurtenances. All definitely describe the mining property.

The defendants Joseph B. Diamond and Thomas C. Price filed separate answers in which each denies all the material allegations of the various causes of action set

forth in the amended complaint, except that each admits that they are co-owners of a certain coal prospecting permit and they each attach a copy of the permit to their answers.

The defendants Bruno Agostino and James Agostino filed a joint answer, in which they deny all the material allegations of the various causes of action in the amended complaint.

The First National Bank of Anchorage, Alaska, was allowed to intervene and filed an amended complaint in intervention, in which complaint it sets forth that it is the owner of the coal mining equipment, tools, buildings and machinery which the intervenor sold on conditional sales contract, on September 11, 1935, to Bruno Agostino, that said contract was duly filed and renewed; that on the 11th day of September, 1935, the intervenor caused a notice to be posted in which notice it claimed to be the owner of all buildings, consisting of bunk house, cook house, engine rooms, washery with the machinery contained therein, coal bunkers, donkey boiler and hoist, one 5 H. P. engine, one fan, and all tools and equipment located at the Pioneer Coal Mine, located on Moose Creek, and that said First National Bank of Anchorage, Alaska, would not be responsible for any labor performed on said buildings or in the removal of the same to the Black Diamond Coal Mine and that it had repossessed itself of said personal property and it attaches a copy of the notice, so claimed to have been posted, to its amended complaint in intervention.

Sulberto Sulberti was substituted as plaintiff in place of Ernest Zulbert.

The plaintiffs answered the amended complaint of the intervenor by denying all except that the intervenor is a corporation, that plaintiffs claim a lien on personal property sold on conditional sales contract, that said contract was filed and renewed.

At the trial of this case, the plaintiffs proved that they were employed by Bruno Agostino and James Agostino and worked on the property of the New Black Diamond Coal Mine to the extent claimed in the various liens and offered evidence to show that the defendants Thomas C. Price and Joseph B. Diamond were the owners of a certain coal leasing permit, under which the coal of the Black Diamond Coal Company was being mined. The evidence showed that the said coal was being mined under an arrangement made between said Diamond and Price with said Agostino, under which the said Agostino was to pay a certain amount per ton to the owners of the permit.

Whereupon the plaintiffs rested and the Court granted a non-suit as to the defendants Joseph B. Diamond and Thomas C. Price.

Whereupon Bruno Agostino offered evidence to the effect that some arrangement was made between him and the plaintiffs under which the plaintiffs agreed to work for him and take their wages out of the profits made on the coal mined, but the evidence was indefinite and not satisfactory.

Whereupon the intervenor offered evidence to the effect that it was the owner of certain personal property, that said property was sold on a conditional sale contract to Bruno Agostino, that said contract was duly filed and renewed; that on September 11, 1935, a notice was posted on the coal washing plant situate at the Pioneer Mining Company at Moose Creek, previous to its removal to the Black Diamond Coal Mine, which notice of ownership is the same as the one attached to the amended complaint and is in words and figures as follows, to-wit:

"Notice

"Notice is hereby given that the First National Bank of Anchorage, Alaska, is the owner of all buildings consisting of bunk house, cook house, engine room, washery with the machinery contained therein, coal bunkers, don-

key boiler, and hoist, one five h.p. engine, one fan, and all tools and equipment located at the Pioneer Coal Mine on Moose Creek, Third Division, Territory of Alaska.

"Said property was sold on the 10th day of September, 1935, by a Conditional Sales Contract, to Bruno Agostino, and has been duly filed with the United States Commissioner at Anchorage, Alaska; that the title to the above-mentioned property remains with the First National Bank until the terms of said Conditional Sales Contract is fully completed; that the First National Bank will not be responsible for any labor performed on said buildings, or in the removing of the same to the Black Diamond Coal Mine.

"Dated at Anchorage, Alaska, this 11th day of September, 1935.

> "First National Bank
> "By————————(Seal)
> "Winfield Ervin, Cashier"

The only question in the case is the effect of this notice being posted.

The Court is of the opinion that since all of the work done for which the liens are claimed, was work done and labor performed in connection with the mining of coal at the Black Diamond Mine and does not include any work done or labor performed on any of the buildings mentioned in the notice, or in the removing of the same to the Black Diamond Coal Mine, the notice, as posted, therefore, is of no effect in this case and for that reason no further consideration need be given thereto.

The Lien Laws of Alaska provide:

Section 2007, as amended by Laws 1935, c. 40: "When the work or labor mentioned in sections 2002, 2003 and 2005 of this article is performed at the instance of any person, firm or corporation, having the right of possession under a written or verbal lease, license or authority, expressed or implied, bond, option or other contract of

sale from the owner, executed by his authority, or having possession with the knowledge of the owner, such work shall be deemed to have been done at the instance of the owner, * * *."

Section 2008: *"Lien to attach to different kinds of property.* The liens provided for in this article shall not be deemed one exclusive of the other, but the lien shall attach and may be claimed by the same labor upon the mine, mining claim, mill or machine used in mining or working, and the dump or mass of mineral, gold or gold dust, should the facts relative to the labor warrant the same; * * *."

Section 2009: "* * * which claim of lien shall contain a true statement of his demand * * * with a description of the property on which the lien is claimed sufficient for identification * * *."

Section 2085: "* * * The inclusion of non-lienable items in the amount of the claimant's demand or error in the terms and conditions of the contract of employment, or other error in the lien notice, made in good faith, shall not be deemed material, unless such error shall affect the substantial rights of the adverse party, acquired in good faith without notice; * * *. If it be shown that a material statement or averment has been omitted or misstated it shall be ground for a reasonable delay or continuance to enable opposing parties to meet such amendment, and no nonsuit or dismissal shall be entertained in such action except upon the merits of the cause."

Section 2093: "The intent of this chapter is hereby declared to be remedial and its provisions shall be liberally construed."

The Court is of the opinion that while the description in the various liens is general, it is sufficient to identify the property; that there has been no change in the ownership of the property and no rights acquired by the adverse party; that the intervenor, under the law, is considered an

employer; that if there are any mistakes in either the liens or the complaint, the liens and complaint should be considered as amended in accordance with the testimony introduced and that findings, conclusions and a decree should be made in favor of the plaintiffs.

The plaintiffs' attorney may prepare findings of fact, conclusions of law and a decree in accordance herewith.