H.A.M.S. COMPANY et al., Appellants,

v.

ELECTRICAL CONTRACTORS OF ALASKA, INC., an Alaskan Corporation, and Tote'em Steel, Ltd., Appellees.

No. 2871.

Supreme Court of Alaska.

May 6, 1977.

Order May 26, 1977.

Karl S. Johnstone and Mark C. Rowland, Anchorage, for appellants.

Kenneth N. McCaskey, Anchorage, for appellees.

Before BOOCHEVER, C. J., and RABINOWITZ, CONNOR, ERWIN and BURKE, JJ.

## OPINION

RABINOWITZ, Justice.

This appeal concerns a judgment which was entered by the superior court foreclosing mechanics and materialmen's liens against real property. Here and below appellants have challenged the validity of the lien claims on the ground the lien claims

1. AS 34.35.070(c) provides:

    The claim shall
    (1) contain a true statement of his demand, after deducting credits and offsets;
    (2) contain the name of the owner or reputed owner, if known;
    (3) contain the name of the person by whom he was employed or to whom he furnished the materials;
    (4) contain a description of the property to be charged with the lien sufficient for identification; and
    (5) be verified by the oath of the claimant or another person having knowledge of the facts.

were not verified by oath as required by AS 34.35.070(c)(5).[1] We reverse the judgment of the superior court.[2]

Appellants contracted with a general contractor, Irvin and Co., for the repair and improvement of the H.A.M.S. building which was located in Anchorage. Irvin and Co. in turn entered into contracts with several subcontractors, including Electrical Contractors of Alaska (ECA) and Tote'em Steel Ltd. (Tote'em Steel). After a substantial amount of the work had been completed, Irvin and Co. found, due to financial difficulties, that it was unable to pay ECA and Tote'em Steel amounts due and owing (approximately $45,000) under their subcontracts. In late May of 1973 both ECA and Tote'em Steel recorded claims of lien against H.A.M.S. Co.'s real property. The lien foreclosure cases were tried to the superior court without a jury, and judgment was entered in favor of ECA and Tote'em Steel against H.A.M.S. Co. and its partners jointly and severally.[3]

The judgment which was entered contains no explicit reference to the validity of the liens which ECA and Tote'em Steel had filed against appellants' real property. The judgment does state that the respective amounts recovered by appellees "shall constitute liens against the H.A.M.S. Company property." On the other hand we note that the superior court's conclusions of law state that the judgment awarded ECA and Tote'em Steel "be satisfied unless paid by foreclosure of plaintiff's claim of lien against the property which is the subject of plaintiff's claim of lien."

2. In view of our disposition of the lack of verification issue we do not address appellants' two additional specifications of error.

3. The superior court's judgment provided that ECA recover against appellants jointly and severally $27,754.76; prejudgment interest in the amount of $4,709.75; costs and attorney's fees in the amount of $4,234.70, for a total of $36,699.21. Tote'em recovered $6,282.75, prejudgment interest in the amount of $1,047.24, costs and attorney's fees in the amount of $1,510.50, for a total judgment of $8,840.49. Tote'em's judgment was against appellants jointly and severally.

In this appeal appellants claim that the superior court erred in declining to hold the lien claims invalid for lack of verification as required by AS 34.35.070(c)(5). Appellees counter by taking the position that the corporate acknowledgments which constituted the conclusion of each of the questioned lien claims constitute "substantial compliance" with AS 34.35.070(c)(5) and therefore render the liens valid.

It is established in law that a verification is a sworn statement of the truth of the facts stated in the instrument which is verified.[4] A verification differs from an acknowledgement in that the latter is a method of authenticating an instrument by showing that it was the act of the person executing it.[5] The text of AS 34.35.070(c)(5) is clear. It requires that the claim of lien shall "be verified by the oath of the claimant or another person having knowledge of the facts."

Neither of the questioned claims of lien contains a verification that the facts stated in the lien claims are true. The respective jurats merely state that the person executing the document did so on behalf of the corporation and acknowledge that the corporation executed the document pursuant to its bylaws or a resolution of the Board of Directors. The jurat at the end of the claim of lien of Electrical Contractors of Alaska, Inc. reads:

> THIS IS TO CERTIFY that on this 18 day of May, 1973, before me the undersigned notary public, personally appeared E. Don Butts, known to me and to me known to be the President of Electrical Contractors of Alaska, Inc., a corporation, and known to me to be the person who executed the same instrument on behalf of the corporation herein named, and acknowledged to me that such corporation executed the same pursuant to its bylaws or a resolution of its Board of Directors.
>
> WITNESS MY hand and official seal.
> (signed by notary public)

The jurat at the end of the claim of lien of Tote'em Steel states:

> On this 21 day of May, 1973, before me the undersigned notary public, personally appeared Jerry H. Goode, known to me to be the President of Tote'em Steel, Ltd., and he acknowledged that he executed the within instrument on behalf of the corporation herein named, and pursuant to its bylaws or a resolution of its Board of Directors.
>
> WITNESS MY hand and official seal.
> (signed by notary public)

Courts which have addressed the issue presented in this appeal have held that an acknowledgement is not sufficient to satisfy a mechanics' lien statute which requires verification of the claim of lien by the claimant. In *Bell and Zajicek, Inc. v. Heyward-Robinson Co.*, 182 A.2d 339 (1962), a factually similar case to the one at bar, the liens which were declared invalid were not sworn to by the claimant, rather the liens:

> were signed by the president of the plaintiff corporation, but instead of the truth of the contents of the certificates being sworn to, the officer subscribing to the certificates merely made an acknowledgment before a commissioner of the Superior Court that he was the signer and sealer of the instrument and that it was

---

**4.** Black's Law Dictionary defines verification as a "[c]onfirmation of correctness, truth, or authenticity by affidavit, oath, or deposition." "Verify" means

> [t]o confirm or substantiate by oath. . . . Particularly used of making formal oath to accounts, petitions, pleadings, and other papers. . . . The word 'verified,' when used in a statute, ordinarily imports a verity attested by the sanctity of an oath. . . . To prove to be true; to establish the truth of; to confirm; to confirm the truth or truthfulness of; to check or test the accuracy or

exactness of; to confirm or establish the authenticity of; to authenticate; to prove. . . .

Black's Law Dictionary 1732–33 (4th ed. 1951).

**5.** "Acknowledge," on the other hand, means "[t]o own, avow, or admit; to confess; to recognize one's acts, and assume the responsibility therefor." Generally, it is used "[i]mplying obligation or incurring responsibility." Black's Law Dictionary at 39 (4th ed. 1951). *See also Bell and Zajicek, Inc. v. Heyward-Robinson Co.*, 23 Conn.Sup. 296, 182 A.2d 339 (1962).

his free act and deed and the free act and deed of the plaintiff corporation.

182 A.2d at 340. The Supreme Court of Connecticut concluded that "the plain meaning of the language of the statute [requiring a verification] cannot be ignored,"[6] and that "a certificate which merely recites that the claimant 'acknowledges' execution of the lien is insufficient."[7]

In the somewhat analogous case of *Hoffman v. Palm Springs,* 169 Cal.App.2d 645, 337 P.2d 521, 523 (1959), the California court held that an unverified claim for damages against a municipality, where the applicable statute required a verified claim, justified the granting of the municipality's motion for judgment on the pleadings. In so holding, the court rejected the claimant's contention that the pleading was in substantial compliance with the controlling statute. There the court said:

The statute involved here provides merely that the claim be verified. . . . No particular form of verification is prescribed. . . . A verification is an affidavit of the truth of the matters stated. . . . Its object is to insure good faith in the averments [of] statements of a party. . . . The term 'verified,' as applied to claims against municipalities, has a settled meaning, and refers to an affidavit attached to the claim, as to the truth of the matters therein set forth. . . . The chief test of the sufficiency of an affidavit is whether it is so clear and certain that an indictment for perjury may be sustained on it if false. . . . (citations omitted)[8]

The *Hoffman* court concluded:

In the instant case there is no affidavit attached to the claim as to the truth of the matters therein set forth and it does not appear that an indictment of perjury could be sustained on it if false.[9]

In opposition to those authorities which have held that the failure to comply with a statutory requirement of verification is fatal to the lien's validity, appellees take the position that lien statutes are remedial and should be liberally construed, and thus since their lien claims substantially complied with all the statutory prerequisites for the creation of valid liens, the questioned liens should be held validly created. Subsections (a) and (b) of AS 34.35.020 provide:

(a) No mistake in formality or lack of statement in the lien notice or the pleadings is ground for dismissal or unnecessary delay in an action to foreclose a lien.

(b) Substantial compliance with the law relating to the contents of the lien notice is considered sufficient, if the notice satisfactorily shows the name of the claimant, the amount of his demand, the time of his employment, the property sought to be charged with the lien sufficient for identification and the name of the owner or reputed owner of the property.[10]

*Stephenson v. Ketchikan Spruce Mills, Inc.,* 412 P.2d 496 (Alaska 1966), marks the only previous occasion this court has had to address issues arising under AS 34.35.070(c)(5)

6. 182 A.2d at 340.

7. *Id.* (citations omitted). *See also Owens v. Ebner,* 74 N.Y.S.2d 169 (Sup.Ct.1947).

8. *Hoffman v. Palm Springs,* 337 P.2d 521, 523 (1959), quoting *Osborn v. City of Whittier,* 103 Cal.App.2d 609, 230 P.2d 132, 138 (1951).

9. 337 P.2d at 524. AS 34.35.500 provides: "The intent of §§ 10–425 of this chapter is remedial and its provisions shall be liberally construed."

10. Subsections (c) and (d) of AS 34.35.020 read in full as follows:
(c) The inclusion of nonlienable items in the amount of the claimant's demand or error in the terms and conditions of the contract of employment, if there is a contract of employment, or other error in the lien notice, made in good faith, is not considered material, unless the error affects the substantial rights of the adverse party, acquired in good faith without notice.
(d) The lien notice and pleadings may be amended at any time before judgment. If a material statement or averment is omitted or misstated, this is ground for a reasonable delay or continuance to enable opposing parties to meet the amendment, and no nonsuit or dismissal may be entertained in the action except upon the merits of the cause.

(verification requirement) and AS 34.35.020 (substantial compliance). In *Stephenson,* one of the issues on appeal was whether a claim of lien was invalid because the claim was not verified in accordance with AS 34.35.070(c)(5). In *Stephenson,* the claimant's signature was missing from the jurat, although it appeared at the bottom of the claim of lien and the jurat was signed by a notary public. There the jurat stated:

> *Lyle E. Anderson,* being first duly sworn, upon oath deposes and says: That he is the Manager of *Ketchikan Spruce Mills, Inc.* and makes this verification for and on behalf of said corporation; that *Ketchikan Spruce Mills, Inc.* is the claimant named in the foregoing claim of lien; *that he has read the same and knows the contents thereof, and that the same is true of his own knowledge.*
>
> *Subscribed and sworn* to before me this 5th day of March, 1962.
>
> (signed by notary public)

412 P.2d at 498 (emphasis added). In *Stephenson* we commented that:

> Substantial compliance with the verification requirement is sufficient. There is substantial compliance here. The form of oath followed by the words 'subscribed and sworn to before me * * *', and the notary public's signature, amounts in substance to a certificate by the notary that the claim of lien was verified by the oath of Anderson. The claim of lien is not ineffective by reason of any insufficiency in the requirement for verification.[11] (footnote omitted)

11. *Stephenson v. Ketchikan Spruce Mills, Inc.,* 412 P.2d 496, 499 (Alaska 1966). Prior to trial in the case at bar, appellants moved for summary judgment on the basis that the liens were defective because they lacked the necessary verifications. The motion was heard and denied by Superior Court Judge Ralph Moody. Judge Occhipinti, who tried the case, believed himself bound by Judge Moody's ruling denying summary judgment.

12. Judge Moody relied upon *Stephenson* in upholding the validity of the liens. In his decision, Judge Moody stated in part:

[T]he verification [in *Stephenson*] was a matter of form and not of substance. . .

In our view, *Stephenson* addressed a different issue than we are confronted with in the instant case.[12] In that case there was an affirmation of the truth of the contents of the lien claims in the form of an oath, and a signature of the lien claimant. Thus, we determined that the specific placement of the signature at the foot of the claim of lien did not affect the validity of the lien since the notary certified "that the claim of lien was verified by the oath of Anderson." On the other hand, in the case at bar, the issue is whether an affiant must swear to the truth of the contents of the document. In our view, *Stephenson,* did not address the statutory requirement that an affiant or claimant swear to the truth and correctness of the statements made in the claim.

■ Generally, some latitude is permitted by statutes as to the form in which the oath or affirmation may be administered,[13] and substantial compliance with such form is often sufficient.[14] However, there is a significant distinction between those portions of Alaska mechanics' liens statutes which are remedial in nature, and those portions which articulate mandatory conditions precedent to the very creation and existence of the lien. It is the latter aspect of Alaska's mechanics and materialmen's lien statutory provisions which is at issue in this case.

■ A case interpreting an Oregon statute, which is the basis for the Alaska mechanics' lien statute, points out:

> It is well established in this state that because the right to a lien is purely statu-

Notice is considered sufficient [when the requirements of the statute regarding the contents are satisfied]. There's no contention that this is not shown in this case and merely is in regard to the verification of certificate and I therefore deny the motion of summary judgment.

13. *United States v. Mallard,* 40 F. 151 (4th Cir. 1889); *Ex parte Finn,* 32 Or. 519, 52 P. 756 (1898).

14. *Hugo v. Miller,* 50 Minn. 105, 52 N.W. 381 (1892); *Ward v. City of Brooklyn,* 32 App.Div. 430, 53 N.Y.S. 41 (1898), *aff'd,* 164 N.Y. 591, 58 N.E. 1093.

tory, a claimant to such a lien must in the first instance bring himself clearly within the terms of such law. The statute is strictly construed as to persons entitled to its benefits and as to the procedure necessary to perfect the lien. . . . However, when the claimant's right to a lien has been clearly established, the law will be liberally interpreted toward accomplishing the purposes of its enactment. (citations omitted)

Anderson v. Chambliss, 199 Or. 400, 262 P.2d 298, 300 (1953). The Anderson court continued, quoting from Christman v. Salway, 103 Or. 666, 205 P. 541, 547 (1922):

" '[I]t must affirmatively appear from the complaint that the notice filed contained all the essential provisions required by statute; that it was proper in form, verified as required, and filed within the time prescribed'." [15] (emphasis added)

In Sullens & Hoss, Inc. v. Farvour, 117 F.Supp. 535, 538, 14 Alaska 492 (D. Alaska 1954), relied upon by both parties to this appeal, the District Court for the Territory of Alaska stated in part:

As to the construction of the lien laws generally, 26–9–13, A.C.L.A.1949, declares that the intent of the Act is remedial and the provisions shall be liberally construed. But, as stated in Johnson v. Halls, 7 Alaska 638 and Irvine v. Mac-Dougall 5 Alaska 300: "The safe and proper rule of construction of mechanic's lien statutes is that, while the remedial portions of the statutes should be liberally construed, with a view to avoid defeating the purpose of the statute, yet these parts upon which the right to the existence of the lien depends, being in derogation of the common law, should be strictly construed." (Emphasis added)

. . . . .

In the absence of statute, it is generally held that a mechanic's lien claim or notice cannot be materially amended or reformed, even in equity, after the expiration of the time prescribed by statute for the filing of the claim. . . . Unless authorized by statute, a mechanic's lien claim may not be amended after the expiration of the time for filing. . .

In various jurisdictions statutes confer authority for the making of the amendment after the expiration of the time for filing, though the statutes vary a great deal in their details. . . . I find no statute exactly like that of Alaska. Even where these statutes are present, however, the Courts do not permit amendment where the lien is fatally defective, as where it is defective in substance and not in form, or where, for some reason, the amendment sought would be in effect the filing of a new claim. Nor will amendment be allowed after the time for filing so as to affect the rights of a bona fide purchaser or encumbrancer, or intervening rights of other third parties. (citations omitted, emphasis added.)

117 F.Supp. 537–38.

■ Following this Oregon and territorial Alaskan case precedent, we think a construction of AS 34.35.070(c)(5), which requires that the claim of lien be verified by the oath of the claimant or another person having knowledge of the facts as essential to the existence of the lien, is mandated.[16] Given the significant impact that the filing of a lien claim can have against the owner of the subject property, we think that strong policy reasons underlie the legislature's determination that claims of lien must be verified. We think the requirement of verificant is reflective of the legislature's awareness that a claim of lien adversely affects the title to the property and

15. *Anderson v. Chambliss*, 262 P.2d 298, 301 (1953).

16. Such an interpretation is in line with our decisions requiring due process notification and opportunity to be heard in prejudgment attachment cases. *See Etheredge v. Bradley*, 502 P.2d 146 (Alaska 1972). It takes notice of the necessary balance between claims of lien and due process requirements inherent in unliquidated claims of lien filed against real property. *See also* Comment, *The Constitutionality of Power of Sale Foreclosure in Alaska*, 6 U.C.L. A.-Alaska L.Rev. 90 (1976).

its alienability; that the claim of lien can have an injurious impact on the credit of the owner of the property which is subjected to the lien; and that the claim of lien can be used as a vehicle to coerce settlement from the owner of the property. In light of these important policy considerations there exists a reasonable basis for the legislature's determination that the significance of filing a lien claim be made clear to the lien claimant through the requirement of verification and the possibility of perjury prosecution for verifying a false lien claim.

■ Thus we conclude that the claims of lien in the case at bar are not valid liens due to the failure of appellees to meet the verification requirements of AS 34.35.-070(c)(5). In reaching this conclusion, we reject appellees' contentions that the corporate acknowledgements affixed to the claims of lien constituted substantial compliance with the verification requirement of AS 34.35.070(c)(5) under AS 34.35.020. Therefore the matter is remanded to the superior court with directions to enter a judgment declaring that the purported mechanics and materialmen's liens of appellees are void and of no legal effect due to the omission of verifications of the respective lien claims.

BOOCHEVER, Chief Justice, dissenting.

While I agree that the corporate acknowledgements affixed to the claims of lien are not tantamount to verifications, I dissent from the holding that the claims of lien may not be upheld under Alaska's liberal validation statute, AS 34.35.020. The statute states:

*Sufficiency in lien notice or pleadings.* (a) No mistake in formality or lack of statement in the lien notice or the pleadings is ground for dismissal or unnecessary delay in an action to foreclose a lien.

(b) Substantial compliance with the law relating to the contents of the lien notice is considered sufficient, if the notice satisfactorily shows the name of the claimant, the amount of his demand, the time of his employment, the property sought to be charged with the lien suffi-

cient for identification and the name of the owner or reputed owner of the property.

(c) The inclusion of nonlienable items in the amount of the claimant's demand or error in the terms and conditions of the contract of employment, if there is a contract of employment, or other error in the lien notice, made in good faith, is not considered material, unless the error affects the substantial rights of the adverse party, acquired in good faith without notice.

(d) The lien notice and pleadings may be amended at any time before judgment. If a material statement or averment is omitted or misstated, this is ground for a reasonable delay or continuance to enable opposing parties to meet the amendment, and no nonsuit or dismissal may be entertained in the action except upon the merits of the cause.

There may be room for disagreement as to whether a corporate acknowledgment in lieu of a verification is a "mistake in formality" under subsection (a). Subsection (b), however, expressly states that "substantial compliance with the law relating to the contents of the lien notice is considered sufficient." To achieve "substantial compliance," the notice must satisfactorily show only the name of the claimant, the amount of his demand, the time of his employment, the property sought to be charged with the lien sufficient for identification and the name of the owner or reputed owner of the property. The requirement of a verification is not listed.

The remaining provisions of AS 34.35.020 afford additional compelling reasons for upholding the trial court's decision. Subsection (c) provides that inclusions of nonlienable items

or other error in the lien notice, made in good faith, is not considered material, unless the error affects the substantial rights of the adverse party, acquired in good faith without notice.

No one contends that the lack of a verification in Tote'em Steel's and ECA's liens affected the substantial rights of an adverse

party acquired in good faith without notice.[1]

Finally, the provisions of subsection (d) appear to demand affirmance of the trial court's decision as to the validity of the liens. "If a material statement or averment is omitted or misstated," a continuance is to be afforded the opposing parties to meet an amendment. Amendments to lien notices and pleadings are permitted at any time before judgment. The use of the term "averment" in addition to "material statement" could be construed to refer to the verification.[2] The absence of verification is hardly the type of change requiring a continuance, and by its judgment, the trial court indicated acceptance of the liens. Any defect in the verification was cured by testimony under oath regarding the material requirements for the lien. Accordingly, the lien notices should be regarded as amended.[3]

Subsection (d) of the statute concludes by stating that "no nonsuit or dismissal may be entertained in the action except upon the merits of the cause." This mandatory language seems dispositive of the instant case. It cannot be argued that the absence of a proper verification goes to the merits.

The majority cites two Oregon cases: *Anderson v. Chambliss*, 262 P.2d 298, 301 (1953), and *Christman v. Salway*, 206 P. 541, 547 (1922). The *Christman* case is quoted as follows:

[I]t must affirmatively appear from the complaint that the notice filed contained all the essential provisions required by statute; that it was proper in form, *verified as required,* and filed within the time prescribed. (emphasis added)

The majority states correctly that the Oregon statute is the basis for the Alaska mechanics' lien statute. But what the majority has failed to note is that the Oregon law did not and still does not contain any liberalizing provision similar to AS 34.35.020. The Act of May 17, 1884 declared the laws of the State of Oregon then in force to be the laws of the District of Alaska. In 1899 and 1900, Congress passed acts providing for codes of law for Alaska, and codification was accomplished by Thomas H. Carter in 1900. Carter's Annotated Alaska Codes contain the basic lien laws adopted from Oregon. It was not until 1933, however, that the predecessor of AS 34.35.020 was enacted as Chapter 113, Section 61, SLA 1933. It seems quite likely that the provision was passed to avoid such technical constructions as indicated in the *Christman* decision.

Here, there is no contention that the liens did not give proper notice to the parties involved or that rights of third parties have

---

1. See *Sullens & Hoss, Inc. v. Farvour*, 117 F.Supp. 535, 537, 14 Alaska 492 (D. Alaska 1954), where there was a defect in identifying the property sought to be charged. The judge held:

   In regard to the property description, the yardstick seems to be whether the notice sufficiently identifies the property sought to be charged. If this test is met, apparently no amendment would be necessary. Further, "other errors" in the notice shall not be deemed material, unless such error shall affect the substantial rights of the adverse parties.

   117 F.Supp. at 537. Since the lack of a verification would be considered an "other error(s)," the subject liens would be enforceable under the rationale of this case. Additionally, in the only Alaska Supreme Court case directly addressing AS 34.35.020, an unsigned verification was upheld on the basis of substantial compliance. *Stephenson v. Ketchikan Spruce Mills, Inc.,* 412 P.2d 496, 499 (Alaska 1966).

2. Webster's New International Dictionary, p. 190 (2nd ed. 1960) defines "aver" as: "Law. To avouch or verify; to offer to verify; to prove or justify."

3. See *Gleason v. Diamond,* 9 Alaska 621, 626–27 (D. Alaska 1939), where, after quoting portions of the predecessor to AS 34.35.020, the court held:

   The Court is of the opinion that while the description in the various liens is general, it is sufficient to identify the property; that there has been no change in the ownership of the property and no rights acquired by the adverse party; . . . that if there are any mistakes in either the liens or the complaint, the liens and complaint should be considered as amended in accordance with the testimony introduced and that findings, conclusions and a decree should be made in favor of the plaintiffs.

been adversely affected. The sole basis for disregarding the lien is the policy argument that a verification requirement discourages false liens. That goal, however, can be achieved much more readily by recorders refusing to accept a nonverified lien.[4] The lienor would be placed on notice and could speedily correct the defect rather than being subject to large losses because of a technical omission. Moreover, since a lien loses validity if suit is not filed within six months of recording (AS 34.35.080), encumbrances are of short duration. It thus seems unlikely that even a false claim could cause substantial hardship.

It seems to me that the policy considerations enunciated by Justice Rabinowitz, speaking for the court in the case of *Smalley v. Juneau Clinic Building Corp.,* 493 P.2d 1296 (Alaska 1972), in the absence of a statute such as AS 34.35.020, are much more equitable than those urged by the majority. In *Smalley,* the court was confronted with the question of enforceability of a lease which lacked an acknowledgment, as required by statute. The court held:

> These policy considerations comport with the general rule that the purpose of acknowledgment is usually to allow an instrument to be recorded or to be introduced into evidence without further proof of execution. Both these purposes can be ascribed to the Alaska acknowledgment rule, since an unacknowledged conveyance cannot be recorded and may not be read in evidence without further proof of the conveyance.
>
> We therefore conclude that failure to comply with the mandatory acknowledgment requirement of AS 34.15.150(a), while affecting recordation and admissibility, does not have the effect of making the conveyance void as between the parties. The trial court's contrary determi-

nation in the case at bar was erroneous. (footnotes omitted)

493 P.2d at 1301.

Regardless of the manner in which we balance the policy arguments set forth by the majority against those for disregarding technical errors, it seems to me that the matter has been decided by the legislature. I find that the provisions of AS 34.35.020 are controlling and would affirm the trial court's decision enforcing the liens.[5]

---

4. AS 34.15.350 defines a "conveyance" for purposes of recording as including:

   every instrument in writing by which an estate or interest in real property . . . [is] encumbered, or by which the title to real property is affected, except a will.

   To be eligible for recording, the instrument must be acknowledged, proved or certified as

prescribed. *Nelson v. Lord,* 4 Alaska 174 (1910); *Alaska Exploration Co. v. Northern Mining & Trading Co.,* 152 F. 145 (9th Cir. 1907). *See* AS 34.15.260.

5. Like the majority, I do not pass on the other issues raised by appellants.